[No. E026550. Fourth Dist., Div. Two. Nov. 6, 2000.]

CARLO A. WARREN-GUTHRIE, Plaintiff and Respondent, v. HEALTH NET, Defendant and Appellant.

## COUNSEL

Stephan, Oringher, Richman & Theodora, Gordon E. Bosserman, Gerald J. Miller; Greines, Martin, Stein & Richland, Robert A. Olson and Peter O. Israel for Defendant and Appellant.

Gruber & Kantor, Daniel S. Gruber, Glenn R. Kantor and Sara Smith Ray for Plaintiff and Respondent.

## OPINION

**GAUT, J.**—Defendant Health Net appeals from the denial of its motion to compel arbitration of a coverage dispute between plaintiff Carlo A. Warren-Guthrie and Health Net. We conclude the trial court erred in denying Health Net's motion to compel arbitration under Code of Civil Procedure section 1281.2, subdivision (c)[1] because, under the circumstances of this case, section 1281.2(c) is preempted by the Federal Arbitration Act (FAA).[2]

Furthermore, the choice of law provision in the Health Net plan expressly limits application of California law to the manner in which the arbitration is

---

[1]Unless otherwise noted, all statutory references are to the Code of Civil Procedure and, in this opinion, Code of Civil Procedure section 1281.2, subdivision (c) is referred to as section 1281.2(c).

[2]The FAA is found at title 9 United States Code section 1 et seq.

to be conducted and does not apply to the determination as to whether arbitration is required. We reverse with directions to grant Health Net's motion to compel arbitration.[3]

## 1. *Factual and Procedural Background*[4]

In July 1997, plaintiff was allegedly bitten on her leg by a spider. Over the course of several years she received medical treatment for the serious wound. Plaintiff claims she did not receive timely appropriate treatment and coverage, and this resulted in her condition worsening. During the period of her treatment, plaintiff was insured under Health Net's plan. Health Net refused to cover certain recommended treatment. As a consequence, plaintiff filed a civil action in August 1999 against Health Net and various entities which allegedly provided benefit determinations and or utilization review services to Health Net during plaintiff's treatment. Plaintiff's complaint alleged the following theories of recovery: (1) breach of the duty of good faith and fair dealing, (2) breach of contract, (3) negligence, (4) fraud, and (5) injunctive relief.

Health Net responded to plaintiff's lawsuit by filing a motion to compel binding arbitration, in which Health Net asserted that the Health Net plan contained an arbitration clause requiring binding arbitration of the claims alleged against Health Net in plaintiff's civil action. In opposition, plaintiff argued that the court should deny arbitration because it would risk inconsistent rulings between those of the arbitrated claims against Health Net and the remaining claims in the civil action against the other defendants. The trial court agreed, and accordingly denied Health Net's motion to compel arbitration of plaintiff's claims against Health Net.

## 2. *Section 1281.2(c)*

■ The trial court denied Health Net's motion to compel arbitration on the ground that, under section 1281.2(c), it had the discretion to disregard the Health Net plan's arbitration clause and order joinder of the arbitration claim and civil action so as to avoid potential inconsistent rulings. The trial

---

[3]Health Net's request for judicial notice has been reviewed and is denied.

[4]In plaintiff's brief, plaintiff makes factual and procedural assertions without proper citation to the record. Any reference in a brief to any matter in the record, concerning either an item of evidence or a procedural event, must be supported by a citation to the page or pages in the record at which that matter appears. (Cal. Rules of Court, rule 15(a).) We disregard all factual and procedural assertions in the brief which are not supported by record citations, as they violate California Rules of Court, rule 15(a) (*Stevens v. Superior Court* (1999) 75 Cal.App.4th 594, 601, fn. 6 [89 Cal.Rptr.2d 370]), and rely on Health Net's statement of facts and procedural background.

court relied on *Prudential Property & Casualty Ins. Co. v. Superior Court* (1995) 36 Cal.App.4th 275 [42 Cal.Rptr.2d 227] and *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332 [79 Cal.Rptr.2d 308, 965 P.2d 1178], in which the California Court of Appeal and the California Supreme Court ruled that, despite the existence of an uninsured motorist provision requiring binding arbitration, under section 1281.2, the trial court had the authority to stay arbitration or order consolidation of the arbitration and civil action to avoid the possibility of conflicting rulings.

Section 1281.2(c) "generally authorizes a trial court to consolidate, that is, to 'order intervention or joinder of all parties in a single action or special proceeding . . . as to all or only certain issues' (*id.*, foll. subd. (c)), if it determines that a 'party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact' (*id.*, subd. (c))." (*Mercury Ins. Group v. Superior Court, supra,* 19 Cal.4th at p. 345.)

In *Prudential Property & Casualty Ins. Co. v. Superior Court, supra,* 36 Cal.App.4th 275, the plaintiffs were in two car accidents, which occurred on separate occasions, within several weeks of each other. The plaintiffs were unable to determine which accident caused the plaintiffs' injuries. The plaintiffs filed a civil action against the driver who rear-ended the plaintiffs' vehicle in the first accident, and brought an uninsured motorist claim as to the second accident. The plaintiffs' automobile insurer, Prudential, petitioned to compel joinder of the uninsured motorist arbitration proceeding and the civil action under section 1281.2(c). The trial court granted the petition on the ground that separate proceedings might result in inconsistent rulings regarding the two drivers' comparative fault. (*Prudential, supra,* at pp. 277, 279.)

The *Prudential* court affirmed the trial court ruling, noting that "Section 1281.2(c) specifically gives the superior court the authority to order joinder of an arbitration proceeding and a civil action to avoid the possibility of conflicting rulings. . . . [W]e perceive no legislative intent to abrogate the overarching power of the superior court to stay or join arbitration in its discretion under the various conditions set forth in section 1281.2, including the potential of inconsistent rulings." (*Prudential Property & Casualty Ins. Co. v. Superior Court, supra,* 36 Cal.App.4th at pp. 278-279.)

*Mercury Ins. Group v. Superior Court, supra,* 19 Cal.4th 332, also involved a trial court order requiring joinder of an uninsured motorist claim and related civil action under section 1281.2(c). The *Mercury* court likewise

addressed the issue of whether the trial court had the authority to consolidate an uninsured motorist arbitration proceeding and the insured's pending action against third parties, in order to avoid conflicting rulings on a common issue of law or fact. Consistent with *Prudential,* our high court in *Mercury* held that the right to contractual uninsured motorist arbitration may yield to the statutory exception under section 1281.2(c) to mandatory contractual arbitration. (*Mercury, supra,* at pp. 347-348.)

Plaintiff's and the trial court's reliance on *Prudential* and *Mercury* is misplaced. *Prudential* and *Mercury* are distinguishable from the instant case in a major way. *Prudential* and *Mercury* do not involve a contract provision requiring arbitration of a dispute involving interstate commerce. Hence, the uninsured motorist arbitration claims in *Prudential* and *Mercury* were not subject to the FAA and, as a consequence, the *Prudential* and *Mercury* courts did not address the issue raised in the instant case as to whether the FAA preempted the section 1281.2(c) exception to mandatory enforcement of an arbitration clause. ■ As noted in *Mercury,* "A decision, of course, is not authority for what it does not consider." (*Mercury Ins. Group v. Superior Court, supra,* 19 Cal.4th at p. 348.)

### 3. *FAA Preemption*

■ Section 2 of the FAA provides: "A written provision in . . . a contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.)

In order for the Health Net plan to be subject to the FAA, the plan must involve interstate commerce. ■ As we explained in *Erickson v. Aetna Health Plans of California, Inc.* (1999) 71 Cal.App.4th 646 [84 Cal.Rptr.2d 76], " 'Commerce' for purposes of FAA coverage 'is to be broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause.' [Citations.]" (*Id.* at p. 651.) ■ We concluded in *Erickson* that the Aetna Health Plans (Aetna Plan) involved interstate commerce for FAA purposes because it replaced Medicare coverage and entered into interstate contracts with vendors and service providers operating on a national basis. (*Ibid.*) Likewise, here, the Health Net plan covered Medicare subscribers and provided coverage for emergency patient care received anywhere in the world and for medication manufactured and distributed throughout the country.

Having concluded the Health Net plan involves interstate commerce and thus is subject to the FAA, the remaining question is whether section

1281.2(c) is inconsistent and hence preempted by the FAA. Section 1281.2(c), which allows the state court to disregard an arbitration clause due to the possibility of inconsistent rulings, is clearly inconsistent with the FAA's general mandate requiring enforcement of arbitration clauses. Because the Health Net plan arbitration clause is governed by the FAA, its validity must be determined by principles applicable to contracts generally rather than by the specific state rules limited to governing arbitration contracts.

■ As with California's contractual arbitration law, which appears at section 1280 et seq., "The FAA, and section 2 in particular, 'was intended to "revers[e] centuries of judicial hostility to arbitration agreements," [citation] by "plac[ing] arbitration agreements 'upon the same footing as other contracts.' " ' [Citation.] Through the FAA, 'Congress precluded States from singling out arbitration provisions for suspect status . . . .' (*Doctor's Associates, Inc.* v. *Casarotto* (1996) 517 U.S. 681, 687 [116 S.Ct. 1652, 1656, 134 L.Ed.2d 902] [striking down state law requiring special notice for arbitration provisions in contracts].)" (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1074 [90 Cal.Rptr.2d 334, 988 P.2d 67]; see also *Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 474, and 476, fn. 5 [109 S.Ct. 1248, 1253, 1254, 103 L.Ed.2d 488].)

Thus, "[s]tate courts may, without violating section 2 [of the FAA], decline to enforce arbitration clauses on the basis of 'generally applicable contract defenses, such as fraud, duress or unconscionability.' However, they may not do so on the basis of 'state laws applicable *only* to arbitration provisions.' [Citation.]" (*Erickson v. Aetna Health Plans of California, Inc., supra,* 71 Cal.App.4th at pp. 650-651.)

■ Here, the state statutory defense provided in section 1281.2(c) is not a contractual defense generally applicable to all contracts. It only applies to arbitration clauses. " 'A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. [Citations.]' " (*Broughton v. Cigna Healthplans, supra,* 21 Cal.4th at p. 1075.) Reliance on section 1281.2(c) as a basis for derogating an arbitration clause, thus, is prohibited under the FAA since it is not a defense applicable to all contracts.

In *Erickson v. Aetna Health Plans of California, Inc., supra,* 71 Cal.App.4th 646, Aetna Plan appealed from the denial of its motion to compel arbitration of various claims brought by the insured arising from the alleged failure to provide timely cancer treatment. We held in *Erickson* that state law, requiring certain disclosures in an arbitration clause in a health care service plan (Health & Saf. Code, § 1363.1), was preempted by the FAA and the arbitration clause was enforceable. (*Erickson, supra,* at p. 652.)

Even staying arbitration pursuant to section 1281.2(c) has been held to violate the FAA. (*The Energy Group, Inc. v. Liddington* (1987) 192 Cal.App.3d 1520, 1522 [238 Cal.Rptr. 202].) The court in *The Energy Group,* explained that "The use of Code of Civil Procedure 1281.2 to stay arbitration of a dispute pending completion of court litigation does not involve the question of whether a contract has been formed. It does not render a contract void or subject to rescission; the contract remains valid. Moreover, by its own terms, section 1281.2 applies only to contracts subject to arbitration. In our view, this is not a situation in which application of state law can be justified under the [*Perry v. Thomas* (1987) 482 U.S. 483 [107 S.Ct. 2520, 96 L.Ed.2d 426]] dictum [citation] which allows use of substantive state contract law that is generally applicable to all contracts. We hold, therefore, that section 1281.2 has been preempted by the FAA *if it is used in order to avoid or delay arbitration* of a contract dispute governed by the FAA. (Cf. *Dean Witter Reynolds Inc.* v. *Byrd* (1985) 470 U.S. 213 [84 L.Ed.2d 158, 105 S.Ct. 1238].)" (*The Energy Group, supra,* at p. 1528, italics added, fn. omitted.)

### 4. *Choice of Law Exception to FAA*

 Plaintiff argues that the section 1281.2(c) exception to contractual arbitration is not preempted by the FAA because the Health Net plan contains a choice of law provision expressly stating that arbitration shall be conducted in accordance with California contractual arbitration law, commencing at section 1280.

In *Volt Info. Sciences v. Leland Stanford Jr. U., supra,* 489 U.S. 468, Volt petitioned the court to compel arbitration under section 1281.2 and the FAA. The respondent, Stanford University, moved to stay the arbitration under section 1281.2(c), until resolution of the related civil lawsuit. The underlying construction contract contained an agreement to arbitrate all disputes arising out of the contract. The contract further provided that " '[t]he Contract shall be governed by the law of the place where the Project is located' " (*Volt Info. Sciences* at p. 470 [109 S.Ct. at p. 1251]), that is, California. The trial court denied Volt's motion to compel and ordered the arbitration proceedings stayed under section 1281.2(c), pending resolution of the related civil litigation.

The United States Supreme Court in *Volt* held that "application of the California statute [section 1281.2(c)] is not pre-empted by the Federal Arbitration Act (FAA or Act), 9 U.S.C. § 1 *et seq.,* in a case where the parties have agreed that their arbitration agreement will be governed by the law of California." (*Volt Info. Sciences v. Leland Stanford Jr. U., supra,* 489

U.S. at p. 470 [109 S.Ct. at p. 1251].) The *Volt* court explained that "the FAA does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that 'arbitration proceed *in the manner provided for in* [*the parties'*] agreement.' 9 U.S.C. § 4 (emphasis added). Here the Court of Appeal found that, by incorporating the California rules of arbitration into their agreement, the parties had agreed that arbitration would not proceed in situations which fell within the scope of Calif. Code Civ. Proc. Ann. § 1281.2(c) (West 1982)." (*Volt Info. Sciences, supra,* at pp. 474-475 [109 S.Ct. at p. 1253].) The *Volt* court added that "There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. Interpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration . . . does not offend the rule of liberal construction . . . , nor does it offend any other policy embodied in the FAA." (*Id.* at p. 476 [109 S.Ct. at p. 1254], fn. omitted.)

The *Volt* court explained that, "In recognition of Congress' principal purpose of ensuring that private arbitration agreements are enforced according to their terms, we have held that the FAA pre-empts state laws which 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' [Citations.] But it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms. . . . Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward." (*Volt Info. Sciences v. Leland Stanford Jr. U., supra,* 489 U.S. at pp. 478-479 [109 S.Ct. at pp. 1255-1256].)

Health Net argues that *Volt* is limited to applying section 1281.2 solely for the purpose of staying arbitration and does not support the proposition that denial of arbitration is also permissible where the parties agree to apply California law. We disagree. Although the court in *Volt* did not consider whether the trial court may deny a motion to compel arbitration under the section 1281.2(c) exception to mandatory arbitration, *Volt* nevertheless provides clear guidance in resolving this issue as well. The *Volt* court emphasized that the primary legislative motivation for enacting the FAA was "to enforce agreements into which parties had entered," and that "the FAA does not require parties to arbitrate when they have not agreed to do so . . .

nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement . . . . It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." (*Volt Info. Sciences v. Leland Stanford Jr. U., supra,* 489 U.S. at p. 478 [109 S.Ct. at p. 1255].)

With this in mind, we must determine and enforce the terms of Health Net's plan, whatever they may be. (*Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 58 [115 S.Ct. 1212, 1216-1217, 131 L.Ed.2d 76].) We are not required to compel arbitration if the Health Net plan contains a choice of law provision that allow application of the section 1281.2(c) exception to arbitration. We thus turn to the Health Net plan to determine whether arbitration is required under the FAA.

▇ We construe the Health Net plan as we would an insurance policy.[5] (*Sarchett v. Blue Shield of California* (1987) 43 Cal.3d 1, 3, fn. 1 [233 Cal.Rptr. 76, 729 P.2d 267].) ▇ "Insurance policies are contracts. As such, they are interpreted in the first instance by the rules of construction applicable to contracts. Under standard rules of contract interpretation, the mutual intent of the parties at the time the contract was formed governs its construction. (Civ. Code, § 1636.) So far as possible, we must infer that intent solely from the written provisions of the contract. (*Id.,* § 1639.)" (*Borg v. Transamerica Ins. Co.* (1996) 47 Cal.App.4th 448, 456 [54 Cal.Rptr.2d 811].) Ambiguous language in an insurance policy is construed against the insurer and in favor of coverage. "On the other hand, where the express provisions of an insurance contract are unambiguous, the 'clear and explicit' meaning of those provisions, interpreted in their 'ordinary and popular sense,' controls judicial interpretation, unless 'used by the parties in a technical sense, or unless a special meaning is given to them by usage . . . .' [Citation.]" (*Ibid.*) We are not bound by the trial court's interpretation of the policy language, but must make our own independent interpretation. (*Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1118 [44 Cal.Rptr.2d 272].)

▇ Here, the applicable 1997, 1998, and 1999 Health Net plans state: "In the event of any dispute or controversy concerning the construction, interpretation, performance or breach of this EOC [Evidence of Coverage], including claims for breach of contract or bad faith arising between the Employer, a Subscriber or eligible Family Member . . . and Health Net or

---

[5]Health Net is a health maintenance organization (HMO), rather than an insurance company, and the subject plan is a health care service plan rather than an insurance contract.

any PMG,[6] such dispute or controversy shall be submitted to binding arbitration before the American Arbitration Association."

The 1997 plan states: "Any such Arbitration shall be in accordance with the medical arbitration rules of the American Arbitration Association in effect at the time the Arbitration is commenced. All Arbitration shall be conducted in accordance with the California Code of Civil Procedure, commencing with Section 1280."

The 1998 and 1999 plans similarly state: "Any such Arbitration shall be under rules established by Health Net and the American Arbitration Association. . . . All Arbitration shall be conducted in accordance with the California Code of Civil Procedure, commencing with Section 1280."

The 1997, 1998, and 1999 plans all state that, "BY ENROLLING IN THIS PLAN YOU ARE AGREEING TO HAVE DISPUTES OR CONTROVERSY CONCERNING THE CONSTRUCTION, INTERPRETATION, PERFORMANCE OR BREACH OF THIS EOC, INCLUDING CLAIMS FOR BREACH OF CONTRACT OR ISSUES OF BAD FAITH DECIDED BY NEUTRAL BINDING ARBITRATION. BOTH HEALTH NET AND PLAN MEMBERS WAIVE THEIR RIGHT TO A JURY OR COURT TRIAL FOR THESE DISPUTES OR ISSUES."

The 1997, 1998, and 1999 plans, for purposes of our analysis, are essentially the same. We construe these provisions as generally requiring arbitration of disputes arising between plaintiff and Health Net. These provisions further require California contractual arbitration law to apply to the manner in which the arbitration shall be conducted. There is no express language indicating that California law shall be determinative as to whether or not arbitration is required. Unlike in *Volt*, the parties did not agree that California law shall apply for all purposes. Rather, the agreement limits application of California law to California contractual arbitration law, and further limits the scope of California law to that law pertaining to the manner in which the arbitration is to be conducted. The key plan provision states: "All Arbitration shall be conducted in accordance with the California Code of Civil Procedure, commencing with Section 1280." The key term is "conducted," which is defined in Black's Law Dictionary as, "To manage; direct; lead; have direction; carry on; regulate; do business." (Black's Law Dict. (6th ed. 1990) p. 295, col. 2.)

---

[6]The 1999 plan wording differed only to the extent it replaced "PMG" with the words, "Physician Group."

We conclude the Health Net plan is sufficiently clear in stating that arbitration is required.[7] No other exception is specified. Agreement to apply California contractual arbitration law is expressly limited to that law which bears on how the arbitration shall be conducted, as distinguished from agreeing that the plan shall be governed by California law for all purposes, including the determination as whether or not arbitration is required. There being no such express language to the contrary, and in light of the overriding state and federal policy of enforcing privately negotiated agreements to arbitrate in accordance with their terms (*Volt Info. Sciences v. Leland Stanford Jr. U., supra,* 489 U.S. at p. 478 [109 S.Ct. at p. 1255]; *Mercury Ins. Group v. Superior Court, supra,* 19 Cal.4th at pp. 345-346), we conclude the Health Net plan's limited choice of law provision does not allow nonarbitration based on the section 1281.2(c) exception to arbitration. (*Mastrobuono v. Shearson Lehman Hutton, Inc., supra,* 514 U.S. at p. 62 [115 S.Ct. at pp. 1218-1219].) Hence, under the FAA, the trial court erred in relying on section 1281.2(c) in denying Health Net's motion to compel arbitration.

### 5. *Health Net Plan Binding on Plaintiff*

Plaintiff argued in the trial court that the Health Net plan was not binding on her because she was not involved in negotiating the terms of the plan. Rather, Cal-PERS, her employer's agent, negotiated the plan on behalf of all California public employees. Health Net argues that such proposition is meritless under *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 707 [131 Cal.Rptr. 882, 552 P.2d 1178]; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 977 [64 Cal.Rptr.2d 843, 938 P.2d 903]; and *Erickson v. Aetna Health Plans of California, Inc., supra,* 71 Cal.App.4th at pages 653-654. Plaintiff does not address this issue in her respondent's brief and thus has conceded the issue on appeal. (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 [31 Cal.Rptr.2d 264] ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived."].)

### 6. *Exclusion of Public Injunctive Relief Cause of Action from Arbitration*

■ During oral argument, plaintiff's counsel requested that, in the event this court reversed the trial court ruling denying arbitration, this court do so

---

[7]The 1997, 1998, and 1999 Health Net plans state that "Arbitration is not to be utilized for the resolution of disputes and identification or responsibility when the issue is medical malpractice, that is, improper or negligent rendering of health care services. An aggrieved Member may pursue any remedy through the civil court system." It is undisputed that the arbitration claims in question do not include any medical malpractice claims against Health Net.

with the exception of the cause of action for public injunctive relief (Bus. & Prof. Code, § 17200). Plaintiff's counsel argued that under *Groom v. Health Net* (2000) 82 Cal.App.4th 1189 [98 Cal.Rptr.2d 836], and *Broughton v. Cigna Healthplans, supra,* 21 Cal.4th 1066, the injunctive relief cause of action was not an arbitrable claim. Following oral argument, Health Net filed a request to brief the issue. This court granted Health Net's request and permitted both parties to file supplemental briefing.

Health Net argues in its supplemental brief that (1) plaintiff waived the issue by not raising it until oral argument; (2) the issue is moot because the trial court sustained, without leave to amend, other parties' similar injunctive relief cause of actions and therefore will likely do so as to plaintiff's injunctive relief cause of action; (3) *Broughton* is distinguishable because it involved a claim under the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750), rather than a claim under Business and Professions Code section 17200; (4) *Groom* did not analyze the issue and thus should not be relied upon; and (5) if this court severs the injunctive relief cause of action, this court should order trial of that cause of action stayed until the remainder of the action is arbitrated.

Although plaintiff should have raised this issue in its respondent's brief, prior to oral argument, Health Net has not been prejudiced by plaintiff's tardiness since this court gave Health Net an opportunity to fully brief the issue. We further conclude that the issue is not moot as to the parties to this appeal since, to date, the trial court has not sustained a demurrer to the injunctive relief cause of action which is the subject of this appeal.

As to Health Net's request for a stay of the injunctive relief cause of action pending arbitration of the remainder of the action, we leave for the trial court the determination as to how it wishes to proceed once this case is remanded for trial of the injunctive relief cause of action.

Finally, we conclude that under *Groom* and *Broughton*, the public injunctive relief cause of action is not arbitrable since it is beyond the arbitrator's power to grant the relief requested and thus must be severed from the other arbitrable claims and adjudicated in a judicial forum. (*Broughton v. Cigna Healthplans, supra,* 21 Cal.4th at pp. 1079-1080; *Groom v. Health Net, supra,* 82 Cal.App.4th at p. 1199.)

### 7. *Disposition*

The judgment is reversed with directions that the trial court grant Health Net's motion to compel arbitration, with the exception of the cause of action

for public injunctive relief, which shall be severed from the arbitrable claims and adjudicated in a judicial forum. Health Net is awarded its costs on appeal.

Ramirez, P. J., and McKinster, J., concurred.