**STONE & WEBSTER, INC., a Louisiana corporation, as successor-in-interest to Stone & Webster Engineering Corporation, Plaintiff,**

v.

**BAKER PROCESS, INC., a Delaware corporation; and Salton Sea Power L.L.C., a Delaware limited liability company, Defendants.**

No. CIV.02–CV–0638–BTM(JFS).

United States District Court,
S.D. California.

June 18, 2002.

---

Michael F. Boyle, Higgs, Fletcher & Mack, LLP, San Diego, CA, for Plaintiff.

David A. Hecker, Kutak Rock, Lincoln, NE, for Defendants.

**ORDER DENYING STONE & WEBSTER'S MOTION FOR JOINDER OF ARBITRATION CLAIMS WITH THIS ACTION [3–1]; AND GRANTING SALTON SEA POWER'S MOTION TO COMPEL ARBITRATION AND STAY THE INSTANT PROCEEDINGS [7–1]**

STIVEN, United States Magistrate Judge.

## I.  INTRODUCTION

On May 24, 2002, Plaintiff Stone & Webster Inc.'s Motion for Joinder of Arbitration Claims with this Action and Defendant Salton Sea Power LLC's Motion to Compel Arbitration and Stay the Instant Proceedings came on regularly for hearing in the above entitled Court.  Plaintiff's motion was filed on April 16, 2002.[1]  Opposition papers were filed on May 10, 2002. Reply papers were filed on May 23, 2002. Defendant's motion was filed on April 24, 2002.  Plaintiff filed an opposition on May 10, 2002.  Defendant replied on May 23, 2002.  Attorneys Michael F. Boyle, Esq. and Nicholas K. Holmes, Esq. appeared for Plaintiff.  Attorneys David Hecker, Esq. and Ann Salisbury, Esq. appeared for Defendant Salton Sea Power, LLC, and Bill Collier, Esq. appeared on behalf of Defendant Baker Process, Inc.[2]

---

1.  On May 20, 2002, Defendant Baker Process, Inc. Filed a Notice of Joinder in Plaintiff's Motion for Joinder of Arbitration Claims with this Action.

2.  This matter was referred to the undersigned

## II.  BACKGROUND

### A.  RELEVANT FACTUAL BACK-GROUND[3]

In September of 1998, Defendant Salton Sea Power LLC ("Salton") entered into a contract with Plaintiff Stone & Webster, Inc. ("Stone & Webster") for the design, procurement, and construction of a geothermal power plant—a Silica Control System—in Calipatria, California.

Based on Salton's specifications, Stone & Webster entered into a subcontract with Baker Process, Inc. ("Baker Process") to help design as well as supply and erect the components of the Silica Control System.

During the start-up of the power plant, Salton complained of problems with certain components of the Silica Control System, many of which were provided by Baker Process.  Salton demanded that Stone & Webster correct the problem and/or provide an entirely new system.

In March 2002, Salton commenced an arbitration proceeding against Stone & Webster to resolve the disputes that had arisen with respect to the Silica Control System pursuant to the arbitration clause contained in the Stone & Webster/Salton contract.  Stone & Webster notified Baker Process of Salton's arbitration demand and requested that Baker Process defend Stone & Webster in the arbitration.  Baker Process has not agreed to do so and is not a party to the arbitration proceeding.

### B.  PRESENT DISPUTE

On April 23, 2002, Plaintiff Stone & Webster commenced the instant federal action for declaratory relief against Salton and declaratory relief and indemnity against Baker Process.  In this action, Stone & Webster seeks a determination of its liabilities under the Stone & Web-

ster/Salton contract and the Stone & Webster/Baker Process contract for any design and construction defects in the Silica Control System.  Stone & Webster maintains that Salton specified the design of the Silica Control System and Baker Process provided and constructed the systems' components, therefore Salton and Baker Process are responsible and/or liable for any flaws or defects that may exist in the design and construction of the Silica Control System.

By the instant motion, Plaintiff Stone & Webster moves this Court for an order joining the claims asserted in the arbitration proceeding with the instant action.  In support of its motion, Stone & Webster maintains that joinder is necessary so that all of the relevant parties' rights and obligations may be determined in a consistent fashion, in a single proceeding.  Stone & Webster claims that it cannot compel Baker Process to participate in the arbitration proceeding, because Stone & Webster's purchase order with Baker Process does not contain an arbitration clause.  Hence, Baker Process cannot be made a party to the arbitration suit, but can be and is a party to the instant action.  Therefore, Plaintiff asserts, Stone & Webster's rights and liabilities can only be fully adjudicated in the court action, in which all relevant parties can be made to participate.

Conversely, by its motion, Defendant Salton moves this Court to compel Stone & Webster to arbitrate the disputes arising out of the Stone & Webster/Salton contract pursuant to the parties' agreement to arbitrate and stay the instant action until such claims are arbitrated.

### C.  PARTIES' ARGUMENTS

Neither Stone & Webster nor Salton disputes that there exists a valid agree-

---

Magistrate Judge for decision by order of District Judge Barry Ted Moskowitz, dated April 22, 2002.

**3.**  These facts are adopted from the Plaintiff's moving papers.

ment to arbitrate all disputes arising from their contract[4] and that the Stone & Webster/Salton contract falls within the scope of the Federal Arbitration Act.[5]

Plaintiff Stone & Webster simply argues that California Code of Civil Procedure § 1281.2(c) ("Section 1281.2(c)") was incorporated into the parties' contract[6] by way of the agreement's choice-of-law clause which provides that the contract shall be governed by the laws of the State of California;[7] and Section 1281.2(c) allows the joinder of an arbitration proceeding with a court action when, as here: 1) a party to the arbitration agreement is also a party to the court action with a third party; 2) the arbitration and court actions arise out of the same transactions; 3) there are common issues of law and fact in the arbitration proceeding and the lawsuit; and 4) there is a danger of inconsistent rulings on those common issues if the arbitration is not joined with the court action.[8] *See* Calif.Civ.Proc.Code Ann. § 1281.2(c) (West 2002). Plaintiff Stone & Webster maintains that it is simply invoking its right to move for joinder under the terms of the agreement.

Defendant Salton, on the other hand, argues that the parties' contract is governed by the FAA; the FAA preempts Section 1281.2(c); and the choice-of-law clause in the subject contract does not incorporate Section 1281.2(c). Furthermore, the mere possibility of conflicting rulings is not a ground for staying arbitration under the FAA, and finally Plaintiff Stone & Webster is not prejudiced by the possibility of conflicting rulings under the circumstances of this case.

## III. DISCUSSION

The principle issue to be decided by this Court is whether federal law (the "FAA") or California state law ("Section 1281.2(c)") governs *the issue of arbitrability* (whether or not arbitration will be had) in the subject contract. More specifically, this Court must determine, using applicable case-law, how to construe the choice-of-law clause in the parties' contract. That is, whether or not the choice-of-law clause incorporates Section 1281.2(c) and abrogates the impact of the FAA on the parties' arbitration agreement.

## A. FEDERAL ARBITRATION ACT (the "FAA")

The Federal Arbitration Act permits a "party aggrieved by the alleged ... refus-

---

4. The Stone & Webster/Salton contract provides in relevant part: "All disputes arising pursuant to this Contract that are not settled pursuant to *Section 36.1* shall be decided by binding arbitration...."

5. Section 2 of the FAA "declares that a written agreement to arbitrate in any contract involving interstate commerce or maritime transaction 'shall be valid, irrevocable, and enforceable, save upon such grounds as exists at law or in equity for the revocation of any contract.'" 9 U.S.C. § 2 (West 2002). The subject contract falls with the scope of the FAA, because it involves interstate commerce.

6. The term "parties," herein, shall refer to Stone & Webster and Salton only; and the term "contract" shall refer to the agreement between Stone & Webster and Salton.

7. The Stone & Webster/Salton contract provides in relevant part: "This Contract shall be governed by the internal laws of the State of California, United State of America."

8. Plaintiff Stone & Webster claims that there is a possibility of conflicting rulings in the arbitration and the court action, because, for example, in the arbitration Salton may obtain an award against Stone & Webster solely because of its vicarious liability for any deficiencies in Baker Process' design or fabrication work. In this lawsuit, however, Baker Process may succeed in proving that Salton's design decisions with respect to the system were flawed or that the Salton's misoperation of the system were the cause of all of the performance problems and thereby escape liability to Stone & Webster.

al of another to arbitrate under a written agreement for arbitration" to petition a federal district court for an order compelling arbitration "in the manner provided" in the parties' agreement.[9] *See* FAA 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir.2000). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."[10] *Chiron*, 207 F.3d at 1130 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)).

The "passage [of the FAA] was motivated, first and foremost, by a congressional desire to enforce agreements into which the parties had entered ... Accordingly, the FAA does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Information Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior University*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

The FAA, however, only applies to agreements to arbitrate which involve interstate commerce. *See* FAA 9 U.S.C. § 2 (West 2002). Neither party disputes that the contract at issue is subject to the FAA. Hence, this Court is obligated, under the FAA, to enforce the subject arbitration agreement as written.

## B. CHOICE–OF–LAW EXCEPTION TO THE FAA

■ The U.S. Supreme Court in *Volt* held that parties may contract around the FAA via a choice-of-law clause.[11] 489 U.S. at 469, 109 S.Ct. 1248. That is, parties to

9. Section 4 of the FAA provides in relevant part:
   A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court, which, save for such agreement, would have jurisdiction under Title 28 ... for an order directing that such arbitration proceed in the manner provided for in such agreement ... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement....
   9 U.S.C. § 4 (West 2002).

10. Section 3 of the FAA provides the following:
    In any suit or proceeding brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
    9 U.S.C. § 3 (West 2002).

11. In *Volt*, the California Court of Appeal held that, although the FAA governed the contract in issue, "by specifying that their contract would be governed by 'the law of the place where the project is located,' the parties had incorporated the California rules of arbitration, including § 1281.2(c), into their arbitration agreement." 489 U.S. at 472, 109 S.Ct. 1248. In other words, "the parties had agreed that arbitration would not proceed in situations which fell within the scope of [Section 1281.2(c)]." *Id.* at 475, 109 S.Ct. 1248. The U.S. Supreme Court granted review on the merits, but did not disturb the California Court of Appeal's interpretation of the contract. The U.S. Supreme Court explained that the California Court of Appeal's "conclusion that the parties intended the choice-of-law clause to incorporate the California arbitration rules into their arbitration agreement

an arbitration agreement subject to the FAA, may—through a choice-of-law clause—choose to be bound by state rules of arbitration instead of the FAA. The U.S. Supreme Court explained that

> [w]hile the FAA ... pre-empts application of state laws which render arbitration agreements unenforceable, '[i]t does not follow, however, that the federal law has preclusive effect in a case *where the parties have chosen in their [arbitration] agreement to abide by state rules.'* To the contrary, because '[t]he thrust of the federal law is that arbitration is strictly a matter of contract,' the parties to an arbitration agreement should be 'at liberty to choose the terms under which they will arbitrate.' Where ... parties have chosen in their agreement to abide by the state rules of arbitration, application of the FAA to prevent enforcement of those rules would actually be 'inimical to the policies underlying state and federal arbitration law,' because it would 'force the parties to arbitrate in a manner contrary to their agreement.'

*Id.* at 472, 109 S.Ct. 1248.

Therefore, parties to an arbitration agreement subject to the FAA do not have "a right to compel arbitration of any dispute at any time; [the FAA] confers only the right to obtain an order directing that

'arbitration proceed in the manner provided for in [the parties'] agreement." *Id.* at 474–75, 109 S.Ct. 1248.

In *Mastrobuono v. Shearson Lehman Hutton, Inc. et al.,* the U.S. Supreme Court further expounded upon the choice-of-law exception to the FAA. 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). The court affirmed its decision in *Volt* and added that in order to contract around the FAA, parties must *expressly* do so in their agreement. *See Mastrobuono,* 514 U.S. at 62, 115 S.Ct. 1212; *see also Wolsey, Ltd. v. Foodmaker, Inc.,* 144 F.3d 1205, 1213 (9th Cir.1998); *Sovak v. Chugai Pharmaceutical Co.,* 289 F.3d 615, 615–16 (9th Cir. 2002).

■ The *Mastrobuono* court clarified that, if parties intend state laws to govern the issue of arbitrability (where the issue would otherwise be governed by the FAA), they must make specific reference to the state law they intend to incorporate into their contract. 514 U.S. at 62, 115 S.Ct. 1212 ("At most, the choice-of-law clause introduced an ambiguity into [the] arbitration agreement."); *see also Wolsey,* 144 F.3d at 1212–13. A general choice-of-law clause will not suffice. A general choice-of-law clause will only be construed as incorporating state substantive laws, NOT state procedural laws.[12] *See Mastrobuono,* 514

---

is a question of state law, which [it would] not set aside." *Id.* at 476–77, 109 S.Ct. 1248. The U.S. Supreme Court thereby arrived at its holding that "application of the [Section 1281.2(c)] is not preempted by the Federal Arbitration Act ... in a case *where the parties have agreed* that their arbitration agreement will be governed by the law of California." *Id.* at 469, 109 S.Ct. 1248.

12. In *Mastrobuono,* the arbitration provision and choice-of-law provision were contained in the same clause of the contract. The arbitration provision read in relevant part: "Unless unenforceable due to federal or state law, any controversy ... shall be settled by arbitration in accordance with the rules then in effect, of

the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc. as I may elect." 514 U.S. at 59, n. 2, 115 S.Ct. 1212. The choice-of-law clause stated: "This agreement ... shall be governed by the laws of the State of New York." *Id.* at 58–59, 115 S.Ct. 1212. The *Mastrobuono* court found that "the best way to harmonize the choice-of-law provision with the arbitration provision is to read 'the laws of the State of New York' to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while

U.S. at 64, 115 S.Ct. 1212. In short, if parties to an arbitration agreement (subject to the FAA) intend to be bound by state procedural rules, they must expressly incorporate those state procedural rules into their contract.[13]

While this Court acknowledges that issues of arbitrability are procedural in nature and normally governed by federal law,[14] the U.S. Supreme Court has stated that if the contract shows the parties intended state rules of arbitration to apply, state arbitration rules shall take precedence and govern the issue of arbitrability.[15] *See Volt,* 489 U.S. at 477, 109 S.Ct. 1248 ("The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire

field of arbitration"); see also Section III. E., *infra.*

■ If, however, the parties have NOT effectively contracted around the FAA (that is, they have not expressly incorporated state rules of arbitration into their agreement), then the default presumption is that the FAA was intended to govern the issue of arbitrability. *See Mastrobuono,* 514 U.S. at 59, 115 S.Ct. 1212 (stating that "in the absence of contractual intent to the contrary, the FAA would preempt" the state procedural rule); *Sovak,* 289 F.3d at 615–16 ("Parties may agree to state rules for arbitration even if such rules are inconsistent with those set forth in the Federal Arbitration Act ... However, parties must clearly evidence their intent to be bound by such rules. [Other-

the arbitration clause covers arbitration; neither sentence intrudes upon the other." 514 U.S. at 64, 115 S.Ct. 1212; *See also Volt,* 489 U.S. at 475, 109 S.Ct. 1248 (it is a "settled federal rule that questions of arbitrability in contracts subject to the FAA must be resolved with a healthy regard for the federal policy favoring arbitration."); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

13. In *Mastrobuono* the choice-of-law clause purport[ed] to incorporate the N.Y. state *Garrity Rule* (which did not permit arbitrators to award punitive damages), but the arbitration clause authorize[d] arbitration in accordance with NASD rules (which permitted arbitrators to award punitive damages). 514 U.S. at 60, 115 S.Ct. 1212. The court found that the two provisions, when read together, were not "an unequivocal exclusion of punitive damages claims." *Id.* at 60, 115 S.Ct. 1212. "At most, the choice-of-law clause introduce[d] an ambiguity into an arbitration agreement that would otherwise allow punitive damages awards." *Id.* at 62, 115 S.Ct. 1212. "[I]n the absence of contractual intent to [be bound by the N.Y. *Garrity Rule* ], the FAA would preempt the *Garrity Rule.*" *Id.* at 59, 115 S.Ct. 1212.

14. A federal court sitting in diversity must apply and/or enforce state laws that are clearly substantive and federal procedural rules. *See Byrd v. Blue Ridge Rural Electrical Co-op., Inc.,* 356 U.S. 525, 536, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). This court's jurisdiction here is based on diversity of citizenship.

15. In this regard, the U.S. Supreme Court in *Volt* has explained that the FAA does not prevent "the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself ... Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted. Where ... the parties have agreed to abide by the state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward. By permitting the courts to 'rigorously enforce' such agreements according to their terms, we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA." 489 U.S. at 479, 109 S.Ct. 1248.

wise], the strong default presumption is that the FAA, not state law," governs the issue of arbitrability.).

## C. *9TH CIRCUIT CASE–LAW*

The 9th Circuit, by which this Court is bound,[16] has construed general choice of law clauses—*in contracts covered by the FAA*—consistent with the U.S. Supreme Court cases of *Volt* and *Mastrobuono*.[17]

In *Wolsey v. Foodmaker*, the parties' agreement provided, in separate clauses, that all disputes would be arbitrated[18] and that the contract would be governed by California state law.[19] 144 F.3d at 1207. Wolsey argued in the Southern District of California that the Development Agreement incorporated California arbitration rules, specifically Section 1281.2(c), through the agreement's choice-of-law clause. *See Id.* at 1209. The district court agreed.

The 9th Circuit, however, reversed and remanded, stating the following: "Applying *Mastrobuono*, the Development Agreement between Foodmaker and Wolsey should not be read to incorporate [Section 1281.2(c)]. Like the contract in *Mastrobuono*, the Development Agreement contains an arbitration clause and a general choice-of-law clause, but does not contain a specif-

ic reference to the state arbitration rule at issue." *Id.* at 1212. "Because *Mastrobuono* dictates that general choice-of-law clauses do not incorporate state rules that govern the allocation of authority between courts and arbitrators, the district court erred in applying [Section 1281.2(c)] to deny Foodmaker's motion to compel arbitration." *Id.* at 1213. State procedural rules such as Section 1281.2(c) that go to the issue of arbitrability must be incorporated specifically.

In *Chiron Corp. v. Ortho Diagnostic Systems*, the parties agreed "to arbitrate 'any dispute, controversy or claim arising out of or relating to the validity, construction, enforceability or performance' of the agreement." 207 F.3d 1126, 1130 (9th Cir. 2000). The agreement also contained a separate choice-of-law clause, which provided that the "agreement shall be construed and interpreted according to the laws of the State of New Jersey." *Chiron*, 207 F.3d at 1130. Chiron sought an order compelling arbitration under the FAA.

Relying on *Mastrobuono* and *Wolsey*, the 9th Circuit again held that "the inclusion of a choice-of-law clause in the arbitration agreement does not incorporate state decisional law pertaining to the allocation of power between courts and arbitrators." *Id.* at 1130. The choice-of-law

---

16. *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir.2001) ("A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue, or with Supreme Court Justices writing for a majority of the Court.").

17. *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir.2001) ("A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it. Judges of inferior courts may voice their criticisms, but follow it they must.").

18. The arbitration provision read as follows: "Except as provided in Section 19.2 hereof

[pertaining to injunctions against Wolsey], all controversies, disputes or claims ... shall be submitted for non-binding arbitration." *Wolsey*, 144 F.3d at 1207. It is interesting to note that Wolsey argued that "the FAA does not apply to non-binding arbitration such as that provided for in the Development Agreement." The 9th Circuit held that "[a]rbitration need not be binding in order to fall within the scope of the Federal Arbitration Act." *Id.* at 1209.

19. The choice-of-law clause read as follows: "[T]his Agreement between Foodmaker International and [Wolsey] shall be interpreted and construed under the laws of the State of California, U.S.A." *Wolsey*, 144 F.3d at 1209.

clause did not incorporate Section 1281.2(c), thus the FAA governed the issue of arbitrability and arbitration should have been compelled. *Id.* at 1131; *see also Sovak*, 289 F.3d at 615–16 ("a general choice-of-law clause *within* an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration.").

### D. CALIFORNIA COURT OF APPEAL CASE–LAW

Plaintiff argues that the construction and interpretation of private contracts is a matter of state law and California state courts interpret general choice-of-law clauses as incorporating both state substantive and state procedural laws.[20]

After reviewing the state court cases upon which the Plaintiff relies, it is this Court's view that California case-law is consistent with federal case-law in its construction of choice-of-law clauses in agreements to arbitrate which are covered by the FAA.[21]

For example, in *Warren–Guthrie v. Health Net*, the arbitration provision and choice-of-law provision were contained in the same section. 84 Cal.App.4th 804, 101 Cal.Rptr.2d 260 (2000). The contract provided that "[a]ll Arbitration shall be *conducted* in accordance with the California Code of Civil Procedure, commencing with Section 1280." 84 Cal.App.4th at 815, 101 Cal.Rptr.2d 260 (2000). The issue on appeal was whether the parties' choice-of-law provision allowed application of Section 1281.2(c). *See Warren–Guthrie*, 84 Cal. App.4th at 814, 101 Cal.Rptr.2d 260.

The Court of Appeal interpreted the provision to mean that the parties intend-

---

**20.** In support of this argument, Plaintiff Stone & Webster relies on the U.S. Supreme Court decision in *Volt*, which states that whether "the parties intended the choice-of-law clause to incorporate the California arbitration rules into their arbitration agreement is a question of state law...." 489 U.S. at 476–77, 109 S.Ct. 1248. Plaintiff claims that California state courts interpret general choice-of-law clauses as incorporating state substantive and state procedural rules and suggests that this Court should ignore both U.S. Supreme Court and 9th Circuit case-law holding that general choice-of-law clauses (such as the one contained in Stone & Webster/Salton contract) do not incorporate state procedural laws. However, this Court finds that it need not reach the issue of the scope of U.S. Supreme Court decision of *Mastrobuono* and its affect on California state decisional law at this time, because, in this Court's view, both applicable federal and state law cases are reconcilable and consistent with *Volt* and *Mastrobuono* on the issues of which law governs the issue of arbitrability under the instant facts. Moreover, the *Volt* court made clear that even when "applying general state-law principle of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambi-guities as to the scope of the arbitration clause itself resolved in favor of arbitration." 489 U.S. at 475–76, 109 S.Ct. 1248.

**21.** The only apparently inconsistent decision is that of the California Court of Appeal in *Volt*, in which the court of appeal held that "by specifying that their contract would be governed by 'the law of the place where the project is located,' the parties had incorporated the California rules of arbitration, including § 1281.2(c), into their arbitration agreement." 489 U.S. at 472, 109 S.Ct. 1248. The U.S. Supreme Court in that case declined to review the California Court of Appeal's construction of the contract in that case. *See id.* at 472, 109 S.Ct. 1248. This decision, however, as discussed herein, is contrary to California state court decisions coming after the U.S. Supreme Court decisions of *Volt* and *Mastrobuono*. See n. 11, *supra*. It is also interesting to note that in denying review of the California Court of Appeal opinion, the California Supreme Court "ordered that the [court of appeal] opinion be not officially published." *Bd. of Trustees of the Leland Stanford Jr. Univ. v. Volt Information Sciences, Inc.*, 240 Cal.Rptr. 558, n. 1 (1987). Thus, the court of appeal opinion in *Volt* "cannot be relied on as precedent...." *In re Nicholas H.*, 2002 WL 436982 *1, n. 1 (Cal.App. 1 Dist.).

ed "California contractual law [shall] apply to the manner in which the arbitration shall be *conducted* ... [but shall NOT] be determinative as to whether or not arbitration is required." *Id.* at 815, 101 Cal. Rptr.2d 260. The California Court of Appeal explained,

> [u]nlike in *Volt*, the parties did not agree that California law shall apply for all purposes. Rather, the agreement limits application of California law to California contractual arbitration law, and further limits the scope of California law to that law pertaining to the manner in which arbitration is to be *conducted* ... in light of the overriding *state and federal policy* of enforcing privately negotiated agreements to arbitrate in accordance with their terms, we conclude the Health Net plan's limited choice of law provision does not allow nonarbitration based on the section 1281.2(c) exception to arbitration. Hence, under the FAA, the trial court erred in relying on section 1281.2(c) in denying Health Net's motion to compel arbitration.

*Id.* at 815–16, 101 Cal.Rptr.2d 260.

In other words, since the parties, by the terms of their agreements, had only incorporated California state laws which govern the manner in which arbitration is to be conducted, and Section 1281.2(c) dictates whether or not arbitration will be had, Section 1281.2(c) was not incorporated into the contract and the FAA supplied the rules for arbitrability.

The case of *Henry v. Alcove Investment, Inc.,* is also in keeping with federal caselaw. 233 Cal.App.3d 94, 284 Cal.Rptr. 255 (1991). Although the California Court of Appeal in that case held that the trial court had properly stayed arbitration pursuant to Section 1281.2(c), this result was due to the fact that the Defendant in that case never offered any evidence at trial showing that the parties' agreement was even covered by the FAA. *See Henry,* 233 Cal.App.3d at 100, 284 Cal.Rptr. 255. ("Alcove offered no evidence in the trial court on the effects of its loan transactions on interstate commerce."). Since the Defendant failed to argue, in the trial court, that the parties' agreement was covered by the FAA, the appeals court refused to entertain that argument for the first time on appeal. *Id.* Because the agreement had not been shown to fall within the scope of the FAA, there was no issue of governing law for the court to address.

*Henry* merely stands for the proposition that an agreement to arbitrate, *NOT covered by the FAA,* is governed by California rules of arbitration. This is consistent with federal case-law, which stands for the principle that a contract *covered by the FAA,* is governed by the FAA—unless the parties expressly provide otherwise.[22] *See Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956) (upholding application of state arbitration

---

**22.** In its opposition papers, Plaintiff Stone & Webster cites to *Hambrecht & Quist Venture Partners v. American Medical Int'l, Inc.* for the proposition that California courts interpret general choice-of-law clauses as incorporating a state's procedural and substantive laws. 38 Cal.App.4th 1532, 1542–43, 46 Cal.Rptr.2d 33 (1995). The Court finds this case unpersuasive and inapplicable for several reasons: First, the contract at issue in *Hambrecht* did not contain an arbitration clause and thus was not subject to the FAA. Second, the issue on appeal was whether the general choice-of-

law clause, which stated that the contract would be "governed and construed in accordance with the laws of the State of Delaware," incorporated Delaware's statute of limitations. As the Court of Appeal's noted, "'statutes of limitations ... defy characterization as either purely procedural or purely substantive.'" *Hambrecht,* 38 Cal.App.4th at 1542, n. 7, 46 Cal.Rptr.2d 33. Therefore, "even if the clause could be read to exclude Delaware procedural law, it does not follow that the statutes of limitations would be excluded." *Id.* at 1542, 46 Cal.Rptr.2d 33.

law to arbitration provision in contract not covered by the FAA.).

## E. CALIFORNIA ARBITRATION ACT—SUBSTANTIVE OR PROCEDURAL?

Pursuant to applicable case-law, discussed above, the general rule is that a general choice-of-law clause only incorporates state substantive laws, but NOT state procedural laws. State procedural laws must be expressly incorporated into the contract. Thus, it is necessary to determine whether Section 1281.2(c) is substantive or procedural. If procedural, then the parties' choice-of-law clause must make specific reference to it in order to effectively incorporate it into the contract. *See Wolsey*, 144 F.3d at 1212.

To learn whether a state law is procedural or substantive, a federal court must determine whether the state law conflicts with a federal procedural law. If it does, then the state law is deemed procedural, and the federal procedural rule governs.[23] *See Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Accordingly, the first question that must be

answered is whether Section 1281.2(c) conflicts with the FAA.

Pursuant to the FAA, a dispute arising from a valid arbitration agreement subject to the FAA, shall be arbitrated, unless the parties expressly provide otherwise. *See Mastrobuono*, 514 U.S. at 62, 115 S.Ct. 1212. Section 1281.2(c) purports to determine whether, under specific circumstances, an arbitrator or judge will hear a dispute the parties had agreed to arbitrate.[24] *See Wolsey*, 144 F.3d at 1212 (Section 1281.2(c) "affect[s] California's allocation of power between alternative tribunals.").

The FAA and Section 1281.2(c) conflict then, as here, where the parties have clearly agreed to arbitrate their dispute; the arbitration agreement is subject to the FAA; and Section 1281.2(c) is being asserted to require that the dispute be heard by a court because of the possibility of conflicting rulings on common issues of law or fact.

Accordingly, this Court finds that Section 1281.2(c) is a state procedural law, and therefore the parties' must have made specific reference to it in their agreement in

---

**23.** If the state law does not conflict with a federal procedural law, then a federal court must determine what the effect of not applying the state law would have on the outcome of the case or the conduct of the litigants. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Specifically, a federal court must determine whether non-application of the state law would encourage forum-shopping. *See Hanna*, 380 U.S. at 471, 85 S.Ct. 1136.

**24.** Pursuant to California Code of Civil Procedure § 1281.2(c),

"[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate and [a party's refusal] to arbitrate ..., the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, *unless* it determines that:

(c) A party to the arbitration agreement is also a party to a pending court action ... with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact.... If the court determines that a party to the arbitration is also a party to litigation in a pending court action ... as set forth under subdivision (c) herein, the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action ...; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action ... pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action...."
See Calif.Civ.Proc.Code Ann. § 1281.2(c) (West 2002).

order to effectively incorporate it into their contract.

### F. DID THE PARTIES INCORPO-RATE SECTION 1281.2(c) INTO THEIR CONTRACT AND THERE-BY CONTRACT AROUND THE FAA?

This Court finds that the parties did not incorporate Section 1281.2(c) into their contract. Therefore, the FAA governs the issue of arbitrability in this case.

The subject contract contains both an arbitration clause [25] and a choice of-law clause.[26] The terms of the arbitration provision clearly reflect the parties' intent to arbitrate all disputes arising from their agreement and that "arbitrators in any such arbitration shall apply" California state law.

The choice-of-law clause in Stone & Webster/Salton contract, similar to those in the cases of *Mastrobuono* and *Wolsey,* is general and does not expressly reference Section 1281.2(c).

■ Accordingly, this Court finds that, pursuant to applicable case-law, Section

1281.2(c) was not incorporated into the Stone & Webster/Salton contract and therefore cannot be relied upon to order joinder of the arbitration claims with the instant court proceeding.

This Court further opines that the provisions of the subject contract are similar to those in *Warren–Guthrie.* In *Warren–Guthrie,* the contract provided that "[a]ll Arbitration shall be *conducted* in accordance with the California Code of Civil Procedure, commencing with Section 1280." 84 Cal.App.4th at 815, 101 Cal. Rptr.2d 260. The court there found that the parties had limited application of California laws to those that pertained to the manner in which the arbitration was to be conducted.

The Stone & Webster/Salton contract similarly provides that "the arbitrators *in any such arbitration* shall apply the governing law specified in *Section 37.2* of this Contract"—California law. The plain meaning of such language is that the arbitrators in conducting the arbitration shall apply California law, NOT that California law shall govern whether arbitration is required.[27]

**25.** The Stone & Webster/Salton contract provides in relevant part: "All disputes arising pursuant to this Contract that are not settled pursuant to *Section 36.1* shall be decided by binding arbitration in accordance with the Construction Industry Arbitration Rules of the AAA then pertaining, unless the Parties mutually agree otherwise. If there is a conflict between the provisions of this Contract and the provisions of the Construction Industry Arbitration Rules of the AAA, the provisions of this Contract shall prevail. The Parties hereto agree that, notwithstanding such rules of the AAA, the arbitrators in any such arbitration shall apply the governing law specified in *Section 37.2* of this Contract. This agreement to arbitrate shall be specifically enforceable. Any award rendered by the arbitrators shall be final, and any judgment be entered upon it in accordance with the applicable law in any court having jurisdiction."

**26.** The Stone & Webster/Salton contract provides in relevant part: "This Contract shall be governed by the internal laws of the State of California, United State of America."

**27.** Tellingly, the parties' contract does specifically incorporate another section of the California Code of Civil Procedure—Section 1283.05. Section 36.2.4. of the contract provides in relevant part that "[i]n any arbitration proceeding, the Parties shall have the discovery rights established under Section 1283.05 of Title 9 (Arbitration) of the California Code of Civil Procedure." The inclusion of this language in the contract evidences an unequivocal intent on the part of the parties to be bound by Section 1283.05 in the conduct of the arbitration. The parties, however, neglected to expressly reference Section 1281.2(c). Thus, the Court presumes that if the parties had intended to be bound by Sec-

 

Finally, given that the subject contract does not evidence any clear intention that Section 1281.2(c) is to govern the issue of the arbitrability of disputes arising from the contract, this Court finds that the FAA governs the issue of arbitrability. Because the parties entered into a valid agreement to arbitrate all disputes arising from the subject contract, and the contract is covered by the FAA, arbitration must be compelled.

It bears noting that even if the parties had successfully incorporated Section 1281.2(c) into the Stone & Webster/Salton contract, this Court would likely have still compelled arbitration.[28] Plaintiff Stone & Webster's main argument is that Defendant Baker Process' absence in the arbitration proceeding would unduly prejudice Stone & Webster. This argument is not compelling for the following reasons: 1) the disputes between Stone & Webster and Salton are not limited to those between Stone & Webster and Baker Process; 2) Stone & Webster can subpoena Baker Process representatives to testify at the arbitration proceeding, in defending itself against Salton; and 3) even if the arbitration results in a judgment against Stone & Webster, Stone & Webster still has the right to pursue its claims of indemnity as against Baker Process in this action, which is being stayed pending the arbitration.

## IV. CONCLUSION

After hearing oral argument and reviewing the papers submitted, for the reasons stated, **IT IS HEREBY ORDERED:** Plaintiff Stone & Webster Inc.'s Motion for Joinder of Arbitration Claims with this Action is **DENIED.** Defendant Salton Sea

tion 1281.2(c), they would have specifically incorporated Section 1281.2(c) into their contract as they did Section 1283.05.

**28.** Section 1281.2(c) gives this Court the discretion, even when there is a possibility of

Power LLC's Motion to Compel Arbitration and Stay the Instant Proceedings is **GRANTED.**

**IT IS SO ORDERED.**

conflicting rulings on common issues of law or fact in an arbitration and a court action that would prejudice the moving party, to order arbitration and stay the pending court action. See Calif.Civ.Proc.Code Ann. § 1281.2(c) (West 2002).