[No. D041833. Fourth Dist., Div. One. Sept. 8, 2004.]

ERNIE RUIZ, Plaintiff and Respondent, v.
SYSCO FOOD SERVICES, Defendant and Appellant.

**COUNSEL**

Merrill, Schultz & Wolds, Stephen J. Schultz and Mark T. Bennett for Defendant and Appellant.

Western Legal Group and Reza Keramati for Plaintiff and Respondent.

**OPINION**

**HUFFMAN, Acting P. J.**—Ernie Ruiz brought a complaint against his employer, defendant and appellant Sysco Food Services of San Diego (Sysco), seeking damages for defamation and related tort theories. Previously, Ruiz, a driver by trade, had been terminated from Sysco's employment, but was reinstated after he prevailed in a grievance proceeding under the collective bargaining agreement applicable to union employees of Sysco.

In response to the filing of this tort action, Sysco brought a petition to compel arbitration, asserting that the collective bargaining agreement (CBA) again applied and required arbitration of these tort claims, as inextricably intertwined with the termination, grievance, and reinstatement proceedings. (Code Civ. Proc., § 1281.2; all further statutory references are to the Code of Civil Procedure unless otherwise noted.) The trial court denied the petition, ruling that the arbitration provision in the subject CBA did not mandate

resolution of this type of claim by arbitration. Sysco appeals the order, as well as a related order denying Sysco's request for monetary sanctions. (§ 473, subd. (b).)

Insofar as the order on review denied the requested monetary sanctions, it was an appropriate application of the statute and is affirmed. However, the balance of the order, denying the petition to compel arbitration, is erroneous as a matter of law and must be reversed with directions to grant the petition to compel arbitration under California law. Requiring arbitration under California law is within the scope of the CBA arbitration provision and the scope of the original petition to compel arbitration as pled, and is consistent with general Federal Arbitration Act (FAA) policy in favor of arbitration (FAA; 9 U.S.C. § 1 et seq.).

## FACTUAL AND PROCEDURAL BACKGROUND

As alleged in the complaint, Ruiz started working for Sysco as a driver in 1989. Ruiz had a Sysco work jacket that had a rodeo patch which he had won sewed onto it. In 1998, Ruiz lent this jacket to a newly hired employee, Albert Gamez, when Gamez was told not to wear a different logo jacket on the job. Gamez did not return the jacket despite several requests by Ruiz.

By April 2001, Gamez had become Ruiz's supervisor, and Ruiz was the union shop steward. When Ruiz again asked Gamez to return the jacket, he first said it had been thrown away as a filthy rag. Then, on April 10, 2001, at the workplace, Gamez tossed the jacket onto a counter beside Ruiz, made a comment about it not stinking anymore, and left the room. According to Ruiz's declaration filed during a removal and remand proceeding from federal court, he responded by removing a patch from the jacket with a knife, cutting two rips in the jacket, and then putting the knife and patch away in his briefcase. When Gamez returned, he told him that he did not like or respect him and only had to work for him. He says he then tore the jacket with his hands and threw it in the trash, while the knife remained put away.

According to Gamez, Ruiz cut up the jacket in front of him in a threatening manner. As alleged in the Ruiz complaint, Gamez falsely stated to his supervisor, William Robinson, that Ruiz had brandished a knife at him and had cut the jacket with a knife in a slashing manner only a few feet away from him. Gamez inquired of Robinson whether immediate action was needed under the CBA for him to make a complaint. A meeting was immediately held between Gamez, Ruiz, and the supervisor of Robinson,

Mr. Richter. Gamez repeated the brandishing allegations. Ruiz returned to work and then went home. He was then contacted by Richter and told he was suspended pending an investigation.

The complaint further alleges that after Ruiz had gone home, Sysco employees called the police and Gamez repeated the brandishing and slashing allegations. The next day, Ruiz was terminated from his position for alleged violent and threatening conduct.

Through his union, Ruiz filed a grievance, alleging that the discharge was made without "just cause" within the meaning of the CBA. Effective September 2001, the arbitrator determined the investigation resulting in plaintiff's termination had not been fair and complete under the standards of the CBA so as to support the termination of employment. The arbitrator noted that the knife was never recovered and there was a dispute about how big it was and where and how it was used. Ruiz was reinstated.

On April 4, 2002, Ruiz filed his complaint for damages on theories of defamation, false light, public disclosure of private facts, and intentional and negligent infliction of emotional distress, all arising out of the investigation and its aftermath. Sysco removed this action to federal court and then vigorously, although unsuccessfully, opposed Ruiz's motion to remand. The record includes a declaration filed by Ruiz in support of remand, giving details of the entire jacket incident, including the office discussions and rumors about it (e.g., the jacket was hung on an office wall like a trophy), and with a copy attached of a sheriff's office investigative report filed after Sysco reported the incident. The district court remanded the matter, ruling that the defamation and related claims did not arise under or require the interpretation of the CBA, and hence there was no basis for jurisdiction in federal court. The district court's rulings addressed both the investigation of the knife incident and also the allegation of Sysco's filing of a false police report on the incident.

Back in state court, on January 15, 2003, Sysco filed its petition to compel arbitration under the CBA, as its first responsive pleading, in lieu of filing a formal answer. (§ 1281.2.) Opposition was filed, one day late, and the matter went to hearing. Sysco objected that the Ruiz response should be stricken as untimely, and Ruiz's counsel explained that he was unable to attend to filing the response in a more timely manner because he was unforeseeably delayed by other business, and contended that no prejudice had ensued.

On March 4, 2003, the trial court issued its telephonic ruling denying the petition to compel arbitration, on the basis that "(1) the CBA contains no language that compels arbitration of Plaintiff's claims, (2) the CBA does not

contemplate resolution of such claims, and (3) these claims arise from allegations outside the investigation conducted by Defendant. Thus, there is no valid agreement to arbitrate the instant matters. [Citation.] The Court also finds Plaintiff's claims are not subject to the Federal Arbitration Act." (FAA; 9 U.S.C. § 1 et seq.) The trial court prepared an extensive statement of decision explaining these findings as follows.

First, the court quoted from the CBA, article 14, as follows: "[a] grievance shall include any difference of opinion or dispute between the Employer and the Union or any employee covered by this Agreement regarding the interpretation of this Agreement. It shall also include any disputed layoff, suspension, dismissal or discharge of any employee who is entitled to contest such action." Article 14 then sets forth a three-step process to resolve a grievance, beginning: "[I]f a representative of the Employer and the Union cannot settle a grievance as outlined above, the matter *may* be referred to arbitration . . . ."

From that language, the trial court concluded that the arbitration provision in the CBA did not mandate resolution of Ruiz's claims by arbitration, because these claims were of a different nature than the grievance about the termination and discharge. Specifically, the trial court noted:

"Here the gravamen of the complaint does not concern conduct contemplated by the CBA. Further, a critical distinction exists in the instant matter because Plaintiff alleges, and Defendant does not dispute, statements regarding Plaintiff were made to the police and employees outside Defendant's investigation. Because these statements were unnecessary to perform the investigation they are reasonably characterized as falling outside Defendant's right to conduct an investigation in the resolution of a grievance. As such, Plaintiff's instant claims are not inextricably intertwined with consideration of the terms of the CBA, and said claims are not contemplated by the CBA."

In its ruling, the trial court made two further findings on issues not raised by the parties. It observed that no grievance had been filed by Ruiz to invoke any arbitration proceedings on these particular claims. Further, the court questioned whether Sysco had waived any right to compel arbitration by its actions in originally removing this action to federal court and then vigorously, although unsuccessfully, opposing Ruiz's motion to remand. (§ 1281.2, subd. (a).)

Finally, in its ruling, the trial court also denied the request by Sysco to strike the response to its petition, and to award it $1,350 for attorney fees, made on the grounds that Ruiz's responsive papers were not properly before the court because they were unverified and served one day late. (§ 473, subd. (b).) The ruling states, "The Court is similarly not inclined to impose

Defendant's requested sanction for filing Plaintiff's response one day late. There is no prejudice to Defendant, and the Court is unwilling to effectuate such a measure."

Sysco appeals the orders of denial of its petition to compel and the monetary sanctions request. This court issued its original opinion to reverse and compel further proceedings on certain jurisdictional issues, but then granted the Sysco petition for rehearing in this case.

## DISCUSSION

■ The parties agree that because the essential background and procedural facts are undisputed, the applicable standard of review for the legal questions presented here is de novo. (*Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1716 [1 Cal.Rptr.3d 328]; *NORCAL Mutual Insurance Co. v. Newton* (2000) 84 Cal.App.4th 64, 71–72 [100 Cal.Rptr.2d 683].) "Whether an arbitration agreement applies to a controversy is a question of law to which the appellate court applies its independent judgment where no conflicting extrinsic evidence in aid of interpretation was introduced in the trial court. [Citation.]" (*Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1670 [53 Cal.Rptr.2d 515].)

We first address certain foundational issues as already developed in this record, concerning the proper scope of coverage of the arbitration clause in the CBA. In part II, *post*, we will discuss the question of whether federal or state arbitration law should apply. Finally, we address the order denying Sysco's request for sanctions. (Pt. III, *post*.) These resolutions of the issues reflect our grant of the Sysco petition for rehearing and opposition received concerning the original opinion issued in this case.

## I

### UNDERLYING PRINCIPLES ESTABLISHED BY THE RECORD

The parties have vigorously argued the merits of a number of preliminary procedural and substantive issues regarding the applicability and interpretation of the CBA. The main issue is whether the allegations in Ruiz's complaint fall within the scope of the issues addressed by the CBA, such that arbitration may be compelled due to an effective waiver of a judicial remedy. We are also required to dispose of certain preliminary procedural arguments raised by the parties. Following that, we may turn to the question of whether any arbitration proceedings should properly take place in a federal or a state forum.

## A

## CBA Coverage

■ Under both the FAA and section 301 of the federal Labor Management Relations Act (29 U.S.C. § 185(a) (referred to as section 301)), not every dispute concerning employment or tangentially involving a collective bargaining agreement will be preempted by federal employment or arbitration law. (*Allis-Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 213 [85 L.Ed.2d 206, 105 S.Ct. 1904].) The test to be applied is whether the alleged state law tort invokes nonnegotiable state law rights, "independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." (*Ibid.*) Stated another way, to decide whether arbitration of a particular dispute must be compelled under a collective bargaining agreement, a court must determine whether the employee's claims "derive from, or require interpretation of, his collective bargaining agreement. If they do not, the court must determine whether permitting the state law claims to proceed would infringe upon the arbitration process established by the collective bargaining agreement." (*Tellez v. Pacific Gas and Elec. Co., Inc.* (9th Cir. 1987) 817 F.2d 536, 537–538 (*Tellez*).)[1]

The trial court ruled that this grievance and arbitration provision of the CBA did not compel the arbitration of Ruiz's claims: "Defendant does not and cannot point to any other provision in the CBA which requires arbitration. There is no provision of the CBA that contemplates the claims raised by Plaintiff in this action. As such, these claims are not disputes regarding the interpretation of the CBA, and therefore do not arise under the grievance and arbitration provision of the agreement."

Ruiz has based all his causes of action upon alleged defamatory conduct and resulting emotional distress from the employer's conduct during the investigation and interviews carried out in connection with the jacket ripping incident, and subsequent notification of the police of the alleged false accusations. These include Gamez's inquiry of Robinson whether immediate action was needed under the CBA, and a subsequent meeting between Gamez, Ruiz, and the supervisor of Robinson, Mr. Richter, at which Gamez repeated his brandishing allegations. Ruiz went home but was then contacted by Richter and told he was suspended pending an investigation. Then, Sysco employees called the police and Gamez repeated the brandishing and slashing

---

[1] Case law not only under the FAA, but also under section 301, is used in the federal preemption context. (See *Smart v. International Brotherhood of Electrical Workers, Local 702* (7th Cir. 2002) 315 F.3d 721, 724–725.) Where section 301 and the FAA do not conflict, the same types of jurisdictional analyses can be used on these arbitration issues.

allegations. Other employees allegedly learned of the incident and heard derogatory comments about Ruiz around the office.

Because the CBA required Sysco to conduct a fair and complete investigation of the suspension and termination, to determine if just cause was present, we are required to address whether resolution of these derivative defamation and emotional distress claims will necessarily be " 'inextricably intertwined with consideration of the terms of [a] labor contract.' [Citation.]" (*Moreau v. San Diego Transit Corp.* (1989) 210 Cal.App.3d 614, 622 [258 Cal.Rptr. 647] (*Moreau*).) Using the procedure set forth in *Moreau, supra,* 210 Cal.App.3d 614, the entire record may be examined, including the allegations in the complaint, as supplemented by the consistent, noncontradictory declarations filed in the removal and remand proceedings. (*Id.* at p. 624.) These show "the facts which the plaintiff believes support the finding of the tort and the facts which the defendant may assert in defense. [Citations.]" (*Ibid.*; see *Ford v. Shearson Lehman American Express, Inc.* (1986) 180 Cal.App.3d 1011, 1027 [225 Cal.Rptr. 895] .)

" '[The] line between a tort actionable in court and an employment dispute actionable only in a grievance arbitration proceeding is . . . not sharp, except in extreme cases.' [Citation.]" (*DeTomaso v. Pan American World Airways, Inc.* (1987) 43 Cal.3d 517, 526 [235 Cal.Rptr. 292, 733 P.2d 614] (*DeTomaso*).) "Determination of whether resolution of a state tort claim requires interpretation of a collective bargaining agreement, is a function of examining the terms of the agreement, the elements of the tort involved, the facts which the plaintiff believes support the finding of the tort and the facts which the defendant may assert in defense. [Citations.]" (*Moreau, supra,* 210 Cal.App.3d 614, 624.) Both express and implied terms of the CBA shall be considered. (*Miller v. AT&T Network Systems* (9th Cir. 1988) 850 F.2d 543, 548, fn. 2.)

The definition in the CBA, article 14, of a grievance that may be submitted to arbitration includes "any difference of opinion or dispute between the Employer and [an employee] *regarding the interpretation of this Agreement.*" Specifically, to be supportable under the CBA, a termination for "just cause" must be made after a "fair and complete investigation." The arbitrator in the termination proceedings decided that the investigation was inadequate. However, that determination was not concerned with and did not dispose of the current defamation and emotional distress allegations, which address different primary rights. In his response to the petition to compel, Ruiz mainly argued that his tort claims were not arbitrable under article 14 of the CBA, because it does not specifically address the subjects of defamation or emotional distress.

However, this argument fails to recognize that an interpretation of the CBA is required to evaluate those specific claims. The CBA language is broad enough to cover the subject matter of this complaint.

■ Thus, examination of these undisputed facts results in a conclusion that the express and implied terms of the CBA must be considered in determining the merits of these defamation and emotional distress allegations, because they arose in connection with and are inextricable from the actual disciplinary or investigative procedures involved, as set forth in the CBA. (*Moreau, supra,* 210 Cal.App.3d at p. 624.) It will be necessary to engage in an interpretation of the CBA to determine whether the investigation and publications are actionable under the stringent standards applicable to defamation claims (actual malice) and emotional distress (conduct outside the bounds of what a civilized society will tolerate). (*DeTomaso, supra,* 43 Cal.3d 517, 531; *Moreau, supra,* 210 Cal.App.3d at p. 625.) Because of the factual context and nature of the proceedings in which these claims arose, this is most appropriately done by an arbitrator, not the court system. In this case, "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." (*Allis-Chalmers Corp. v. Lueck, supra,* 471 U.S. 202, 213.)

Even though Ruiz alleges that Sysco published this information beyond the scope of any personnel who were actually involved in personnel management and who therefore had a need to know about such disciplinary matters, he has still failed to make an adequate showing that his alleged injury did not derive from rights created by the CBA, to a fair and complete investigation. Whether Sysco's conduct was actionable in this respect must be determined through interpretation of that agreement's terms. (See *Tellez, supra,* 817 F.2d at p. 538, fn. 3.)[2] As a preliminary matter, therefore, the record demonstrates that these allegations of the complaint generally fall within the scope of the arbitration clause in the CBA.

B

Procedural Issues

■ We next resolve certain other subsidiary arguments on the availability of arbitration, before turning to the federal or state jurisdiction question. Contrary to an argument made by Ruiz, the trial court was not required or

---

[2] It would be premature for this court to address the privilege issues raised by Sysco about the permissible scope of such a work-related investigation, and its claim the investigation was entirely privileged. Similarly, we need not now decide whether any of Ruiz's alternative defamation claims are duplicative. (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1385, fn. 13 [88 Cal.Rptr.2d 802].)

allowed to accord any collateral estoppel effect to the federal district court's remand order, which was not a final judgment but rather a procedural order concerning the appropriate forum. "When a federal court grants a motion for remand in the present context, it does nothing more than determine the complaint fails, either directly or by operation of the 'artful pleading' doctrine, to state a question arising under federal law. It does not determine whether a preemption defense can be successfully offered in state court when the entire case is considered." (*Moreau, supra,* 210 Cal.App.3d at p. 621.) The trial court was not bound to follow the reasoning of the federal district court regarding remand in deciding the petition to compel arbitration. Nor was there any waiver by Sysco of any right to seek to compel arbitration merely because it opposed Ruiz's motion to remand the case from federal district court.

■ Next, the trial court should not accept Ruiz's argument that there was no mandatory agreement to arbitrate, due to the permissive "may" language in the subject grievance process in the CBA. The CBA, article 14, sets forth the definition of a grievance, equivalent to the definition of an arbitrable issue, as follows: "[a] grievance shall include any difference of opinion or dispute between the Employer and the Union or any employee covered by this Agreement *regarding the interpretation of this Agreement.*" (Italics added.) Article 14 of the CBA also provides: "[I]f a representative of the Employer and the Union cannot settle a grievance as outlined above, the matter *may* be referred to arbitration . . . ." (Italics added.) These provisions in the CBA, read in context of the entire agreement, do not provide an optional procedure, but rather set out a mandatory arbitration provision that is properly subject to this motion to compel. There has already been a termination-related grievance process and this is the next phase of the dispute. Moreover, Ruiz's contention that there was no mandatory agreement to arbitrate appears to be a new argument on appeal, which is not appropriately addressed here. (*Mayhew v. Benninghoff* (1997) 53 Cal.App.4th 1365, 1372 [62 Cal.Rptr.2d 27].)

Further, the trial court appropriately rejected Sysco's argument that an arbitrator must be given the initial opportunity to decide the scope of the arbitrable claims. There is no support for such an argument in the language of the CBA grievance and arbitration provisions. (See *Carpenters Local 1780 v. Desert Palace, Inc.* (9th Cir. 1996) 94 F.3d 1308.) As the trial court correctly noted in its ruling, "The provision relied upon by Defendant defines the term grievance, and the agreement does not support a clear and unmistakable intent to divest the Court of its authority to determine whether arbitration is proper." The trial court properly had the arbitrability question before it.

## II

## JURISDICTIONAL QUESTION: POTENTIAL FEDERAL PREEMPTION OF STATE LAW THROUGH THE FAA

As reflected in our prior opinion, which was vacated upon the grant of the rehearing petition, the parties have acknowledged the record is vague concerning the nature of Ruiz's employment as a "driver" for Sysco, and whether he drives only within California or participates in interstate commerce in some meaningful way. This factor could affect whether there is any basis to find federal preemption of state arbitration procedures in this case. (*Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 115–121 [149 L.Ed.2d 234, 121 S.Ct. 1302] (*Circuit City*).) On this point, the trial court ruling to deny the petition to compel arbitration was very limited in scope: "Defendant maintains it is a company involved in interstate commerce, but ignores the fact Defendant employs Plaintiff as a truck driver."

In its petition for rehearing, Sysco takes the position that arbitration under California law of these tort claims should be compelled, and no clarification of the type or extent of Ruiz's job duties is required for purposes of determining if FAA or California arbitration law should apply. (*Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1119–1121 [88 Cal.Rptr.2d 664] (*Lagatree*).) In contrast, Ruiz argues that no arbitration of his claims should be compelled under either federal or state law, since the FAA may preempt state law proceedings, but even then, the FAA exemption from arbitration requirements should arguably apply to him as a transportation worker in interstate commerce, leaving no enforceable arbitration agreement. (FAA; 9 U.S.C. § 1.) He also argues that the CBA's arbitration provision does not expressly refer to California law, so California state law is not incorporated into the CBA.

We will examine these respective arguments with reference to the policies surrounding arbitration and the specific arbitration clause involved here. As already noted above, due to the nature of Ruiz's employment and the circumstances under which he was suspended, investigated, terminated, and reinstated, the defamation and tort causes of action asserted here are inextricably intertwined with interpretation of the CBA and cannot be resolved without reference to and interpretation of it. (Pt. IA, *ante.*) We have also established that there is a binding and mandatory arbitration clause in the CBA, covering the substantive issues. Accordingly, the next issues to be addressed are procedural ones: (1) whether the FAA, section 2 coverage provision must preempt state law procedures; (2) which aspect of the FAA, section 2 coverage provision, governing procedure or the decision whether to arbitrate, may apply here; (3) whether an FAA exemption for transportation

workers in interstate commerce applies to any such preemption (FAA; 9 U.S.C. § 1), or alternatively, (4) whether California state law arbitration is available regardless of those matters.

A

Types of Federal Preemption in Arbitration Context

■ The purpose of the FAA coverage provision, section 2, is to compel judicial enforcement of a wide range of written arbitration agreements, even though there was historically a resistance by American courts to the enforcement of arbitration agreements. (*Circuit City, supra*, 532 U.S. 105, 111–112.) For example, the FAA will preempt " 'state laws which "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." ' [Citation.]" (*Lagatree, supra*, 74 Cal.App.4th 1105, 1119.) However, an individual may waive by agreement a constitutional right to a judicial forum for the resolution of disputes. (*Id.* at p. 1116.)

■ As further explained in *Volt Information Sciences v. Leland Stanford Jr. University* (1989) 489 U.S. 468, 478–479 [103 L.Ed.2d 488, 109 S.Ct. 1248], even though the FAA will preempt state laws requiring a judicial forum for the resolution of claims, where there is an effective arbitration agreement, "it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms. . . . Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA . . . ." (*Id.* at p. 479.)

In *Warren-Guthrie v. Health Net* (2000) 84 Cal.App.4th 804, 812–816 [101 Cal.Rptr.2d 260] (*Warren-Guthrie*), the appellate court addressed many issues, including choice of law provisions in arbitration agreements. The court identified two types of arbitration clauses referring to state law. In one type, the arbitration clause agreeing to apply state contractual arbitration law may be limited to that law which bears upon how the arbitration shall be conducted. In the second type, an arbitration agreement may state that the contract between the parties will be governed by state law for all purposes, "including the determination as to whether or not arbitration is required." (*Id.* at p. 816.) In *Warren-Guthrie*, arbitration was compelled, due to FAA preemption of a California statute, section 1281.2, subdivision (c), which

would have allowed the California trial court the discretion to disregard an arbitration clause and order joinder of the arbitrable claim and a pending civil action, to avoid potential inconsistent rulings. The particular choice of law provision in the plan before the court expressly limited the application of California law "to the manner in which the arbitration is to be conducted." Thus, the court held the provision did not apply to the separate determination of whether arbitration would be required or compelled. (*Warren-Guthrie, supra,* 84 Cal.App.4th 804, 815–816.)

In our case, Sysco's petition to compel arbitration raised requests both for arbitration under the FAA as a federal labor law matter, and under the California arbitration act as a state law interpretation of the CBA. (§ 1281.2.) Sysco argues that Ruiz, by being subject to the CBA, has effectively waived any judicial forum for his claims, which are inextricably intertwined with matters governed by the CBA, and therefore an arbitrator should interpret the CBA in light of the facts to be relied on to support those claims, and the facts to be offered by Sysco in its defense. (*Moreau, supra,* 210 Cal.App.3d at p. 624.)

To analyze this claim, we seek to identify which aspect of the CBA arbitration clause is involved here: how the arbitration shall be conducted (procedure) or the initial determination as to whether or not arbitration is required. (*Warren-Guthrie, supra,* 84 Cal.App.4th at p. 816.) The CBA arbitration clause does not refer to California law specifically. It generally provides at article 14 that "[a] grievance shall include any difference of opinion or dispute between the Employer and the Union or any employee covered by this Agreement regarding the interpretation of this Agreement. It shall also include any disputed layoff, suspension, dismissal or discharge of any employee who is entitled to contest such action." Article 14 then sets forth the process to resolve a grievance, beginning: "[I]f a representative of the Employer and the Union cannot settle a grievance as outlined above, the matter may be referred to arbitration . . . ."

This arbitration provision clearly refers to the initial determination of whether arbitration shall be compelled, as to the substantive matters raised by the dispute. No specific issue is raised here concerning a California law defense to the compelling of arbitration, as in *Warren-Guthrie, supra,* 84 Cal.App.4th 804, concerning section 1281.2, subdivision (c). Rather, Ruiz's main objection is that his specific tort causes of action are not covered by the CBA; we have rejected that argument above. We will next discuss his secondary argument, that even if arbitration could otherwise be compelled by the coverage provision of the FAA, section 2, he is nevertheless exempt from it as a "transportation worker" identified in the FAA exemption provision, section 1.

## B

### No Exemption Under FAA Section 1

The parties here have extensively briefed the issue of whether Ruiz's employment falls within a certain exemption for "transportation workers" to the overall applicability of the FAA, as recently clarified in case law, *Circuit City, supra,* 532 U.S. 105, 115–119. This exemption (9 U.S.C. § 1) will limit the scope of the otherwise broad reach of the FAA, 9 United States Code section 2, which provides: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

In reaching its conclusions in *Circuit City, supra,* 532 U.S. 105, the Supreme Court analyzed "not the basic coverage authorization under § 2 of the Act, but the exemption from coverage under § 1. *The exemption clause provides the Act shall not apply 'to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'* 9 U.S.C. § 1. Most Courts of Appeals conclude the exclusion provision is limited to transportation workers, defined, for instance, *as those workers " 'actually engaged in the movement of goods in interstate commerce.' "* [Citation.]" (*Circuit City, supra,* 532 U.S. 105, 112, italics added.)[3]

In *Circuit City, supra,* 532 U.S. 105, the Supreme Court adhered to a narrow interpretation of the FAA, section 1 exemption from coverage, by restricting its applicability to "transportation workers," in line with most of the federal courts of appeals. This was intended to implement the strong federal presumption in favor of enforcing arbitration agreements. (See *Farac v. Permanente Medical Group* (N.D. Cal 2002) 186 F.Supp.2d 1042,

---

[3] In pertinent part, 9 United States Code section 1 provides: " 'Maritime transactions,' as herein defined, means charter parties . . . or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; *'commerce,' as herein defined, means commerce among the several States* or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, *but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.*" (Italics added.)

1045.) As part of its reasoning, the high court took note that there are separate and extensive statutory schemes governing the employment of certain types of transportation workers, such as seamen and railroad workers. This bolstered its conclusion that the FAA excludes from its reach contracts of employment of "transportation workers." (*Circuit City, supra,* at pp. 119–121.) The court's only comment about the scope of the transportation worker exemption was as follows: "It is reasonable to assume that Congress excluded 'seamen' and 'railroad employees' from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers. [¶] As for the residual exclusion of 'any other class of workers engaged in foreign or interstate commerce,' Congress' demonstrated concern with transportation workers and their necessary role in the free flow of goods explains the linkage to the two specific, enumerated types of workers identified in the preceding portion of the sentence. It would be rational for Congress to ensure that workers in general would be covered by the provisions of the FAA, while reserving for itself more specific legislation for those engaged in transportation. [Citation.]" (*Circuit City, supra,* 532 U.S. 105, 121.)

In *Circuit City, supra,* 532 U.S. 105, the Supreme Court was dealing with issues concerning a nontransportation employee (a salesperson) and the enforceability of separate employment-related arbitration agreements. Therefore, the court was not required to decide the scope of the "transportation workers" exemption from the coverage of the FAA, and it did not do so.

As already observed, the sparse record in this case makes it difficult to apply this transportation worker exemption language. (FAA; 9 U.S.C. § 1.) However, as we will next discuss, whether or not it would be proper to compel arbitration under the FAA coverage provision (FAA; 9 U.S.C. § 2), a separate and dispositive issue is presented as to whether arbitration should be compelled under California law.

## C

### Analysis

■ In some cases, "the question of the FAA's applicability appears to be academic. As one court has recognized: '[I]t is unclear what difference it would make if this case were deemed to be outside the scope of the FAA. The parties' agreement would still be a contract that waives [the employee's] right to a judicial forum for employment-related claims and agrees to submit those claims to arbitration. [The employer] would still have the right to seek enforcement of that contract. Although the applicability of the FAA may be significant in the sense that the statute prescribes certain procedural rules that

might not otherwise obtain, we have little doubt that, even if an arbitration agreement is outside the FAA, the agreement still may be enforced . . . .' [Citation.] [¶] Assuming arguendo that the FAA does not apply, we would assess the validity of the parties' arbitration agreements under the California Arbitration Act (CAA) [citation]. Like the FAA, the CAA provides: 'A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' [Citation.] 'California law incorporates many of the basic policy objectives contained in the Federal Arbitration Act, including a presumption in favor of arbitrability . . . and a requirement that an arbitration agreement must be enforced on the basis of state law standards that apply to contracts in general . . . .' [Citation.]" (*Lagatree, supra,* 74 Cal.App.4th 1105, 1120–1121, fn. omitted.)

■ Using this approach, we are not required on this record to decide this case on the basis of potential coverage of these claims by the FAA (federal preemption of state procedures; FAA, 9 U.S.C. § 2), or alternatively, exemption from the FAA's reach within the meaning of the FAA, section 1 as interpreted by *Circuit City, supra,* 532 U.S. 105. Both under the FAA and California law, " 'arbitration is strongly favored, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." [Citations.]' [Citation.] California also has a ' " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " ' [Citation.]" (*Brookwood v. Bank of America, supra,* 45 Cal.App.4th 1667, 1671.) Where general state law principles of contract interpretation permissibly govern the outcome of a petition to compel arbitration, nothing in the FAA need alter the outcome of the matter. (*Maggio v. Windward Capital Management Co.* (2000) 80 Cal.App.4th 1210, 1215, fn. 1 [96 Cal.Rptr.2d 168].)

■ In this case, Ruiz's substantive claims do not hinge upon the performance of his specific job duties, but rather extend to the more generalized issue of the manner in which the investigation of his termination was conducted under the CBA. There is accordingly no need for this court or the trial court to resolve the question of whether Ruiz should be considered to be a transportation worker or not within the meaning of the FAA, and the fact-specific preemption/exemption debate here is moot. Instead, arbitration of these tort claims under California law must be compelled.

This result is consistent with federal policy favoring arbitration, as referred to in a predecessor case to *Circuit City, supra,* 532 U.S. 105, *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 26 [114 L.Ed.2d 26, 111

S.Ct. 1647] (*Gilmer*). Gilmer, an employee who was subject to an arbitration clause as a registered securities representative, argued that his separate statutory age discrimination claim (under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 et seq.) was not arbitrable. Because the employee was otherwise subject to arbitration of disputes in the workplace, he had the burden to show that Congress intended to preclude his potential waiver of a judicial forum for his claims under that law, the ADEA. This would support his claim of exemption from arbitration. The Supreme Court used this language: "Although all statutory claims may not be appropriate for arbitration, '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.' [Citation.] In this regard, we note that the burden is on Gilmer to show that Congress intended to preclude a waiver of a judicial forum for ADEA claims. [Citation.] If such an intention exists, it will be discoverable in the text of the ADEA, its legislative history, or an 'inherent conflict' between arbitration and the ADEA's underlying purposes. [Citation.] *Throughout such an inquiry, it should be kept in mind that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'* [Citation.]" (*Gilmer, supra,* 500 U.S. 20, 26, italics added.)

Ruiz is an employee subject to arbitration of disputes in the workplace, and he had the burden to show that there was legislative intent to preclude him from waiving a judicial forum for these types of claims, for which arbitration is appropriate. (See *Gilmer, supra,* 500 U.S. at p. 26.) He did not make such a showing. Under these circumstances, there is no need for remand for further proceedings as the issues are subject to resolution as a matter of law. We direct the trial court to vacate its previous order in part and to enter a new order granting the petition to compel arbitration under California law, which is not an inconsistent result with the general FAA policy in favor of arbitration (9 U.S.C. § 2), and is consistent with the facts and within the scope of the CBA arbitration provision and the scope of the original petition to compel arbitration as pled.

III

## MONETARY SANCTIONS REQUEST

Sysco finally contends that the trial court erred in denying its motion to award monetary sanctions and strike the response to its petition to compel arbitration, on the grounds that Ruiz's responsive papers were filed and served one day late. (§ 473, subd. (b).) The ruling states, "The Court is similarly not inclined to impose Defendant's requested sanction for filing Plaintiff's response one day late. There is no prejudice to Defendant, and the Court is unwilling to effectuate such a measure."

Section 473 includes both a general provision invoking the discretion of the trial court in ruling upon a request for relief from default, and a mandatory provision that applies when a party is relieved from the consequences of his or her attorney's mistake, inadvertence, surprise, or neglect. (*J.A.T. Entertainment, Inc. v. Reed* (1998) 62 Cal.App.4th 1485, 1492 [73 Cal.Rptr.2d 365].) However, "relief from a dismissal under the mandatory provisions of section 473, subdivision (b), is limited to a dismissal entered 'against' a client." (*Ibid.*) In such a case, if the client is relieved of the dismissal that was caused by the default of the (ir)responsible attorney, the attorney who caused the default must pay compensatory monetary sanctions to the opposing counsel or parties. (§ 473, subd. (b)(2).)

■ Sysco believes that because Ruiz's counsel took responsibility for the one-day late filing of the opposition, due to his inadvertence and other professional commitments, Sysco has become entitled to mandatory monetary sanctions under section 473, subdivision (b). However, there is no reason for us to conclude that the action of the trial court in allowing the opposition to be considered is equivalent to a dismissal entered against the client Ruiz, which was then vacated, causing Sysco to incur extra expenses. Rather, Sysco has not brought itself within the terms of this portion of section 473. There was no abuse of discretion under nor error in interpreting section 473, subdivision (b). Although Sysco was unsuccessful at the trial level in seeking to compel arbitration, that result was not attributable to any inadvertence on the part of Ruiz's attorney so as to invoke the sanctions provisions of section 473, subdivision (b).

Accordingly, no error nor abuse of discretion has been shown in the denial of this sanctions request, based on Ruiz's minimal delay in responding to the petition. We affirm the portion of the order reflecting the trial court's denial of the Sysco request for monetary sanctions.

## DISPOSITION

The order denying the request for monetary sanctions is affirmed. The balance of the order denying appellant's petition to compel arbitration is

reversed and the trial court is directed to enter a different order granting the petition in accordance with the views set forth in this opinion. Each party to bear its own costs.

Nares, J., and Irion, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 19, 2005.