[No. B166798. Second Dist., Div. Three. Dec. 17, 2004.]

MARISOL BALANDRAN et al., Plaintiffs and Respondents, v. LABOR READY, INC., Defendants and Appellants.

## COUNSEL

Morris, Polich & Purdy, Jeffrey S. Barron, David J. Vendler, Pamela A. Mixon; Pierry, Moorhead, McAdams & Shenoi, Allan A. Shenoi and Joseph P. Pierry for Plaintiffs and Respondents.

Perkins Coie, David R. Ongaro, David R. Burtt, Kyann C. Kalin; Littler Mendelson, Robert F. Millman, Robert S. Blumberg and Shannon R. Boyce for Defendants and Appellants.

## OPINION

**CROSKEY, J.—** ■  A service which employs temporary laborers to work for third parties requires all applicants to sign an application agreeing that they are not considered employed until they have been assigned to work on a job. The application also contains an arbitration clause, by which each applicant agrees to arbitrate "any disputes arising out of my employment." Female applicants brought suit against the service and one of its customers, claiming the service illegally agreed to send only male workers to that customer's jobsite. Defendants petitioned to compel arbitration, based on the arbitration clause in the service's application. The trial court denied the petition. We conclude defendants are bound by the restrictive definition of employment in their job application. That definition, by its terms, limited the scope of the arbitration clause and thereby precluded arbitration of plaintiff's preemployment claims. Since plaintiffs were never employed, the arbitration clause does not apply. We affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*[1]

Labor Ready, Inc.[2] is a service which provides temporary labor to its customers on an as-needed basis. Labor Ready's business model works on the premise that the workers are employed by Labor Ready, not its customers. Moreover, Labor Ready does not consider the workers to be its employees at any time other than when they are on a job for a customer. When the worker finishes work at the end of the day, Labor Ready deems the worker to have quit, until such time as the worker is sent on another assignment.[3] This view of the employment relationship is set forth in the Labor Ready application for employment, which each applicant must sign in order to be part of Labor Ready's worker pool and be eligible for assignment. The application contains a section entitled, "Policy Regarding Dispatch Procedures, Employment and Arbitration." In pertinent part, that section provides, "I understand that my employment with *Labor Ready* is on a day-to-day basis. That is, at the end of the work day, I will be deemed to have quit until I report to the dispatch hall and receive a work assignment at a later date. Failure to request a new assignment may affect eligibility for unemployment compensation. I understand that merely registering my availability to work does not constitute employment, and I am not re-employed until I actually receive a new work assignment."

The same section of the application has an arbitration clause, which reads, **"I agree that any disputes arising out of my employment, including any claims of discrimination, harassment or wrongful termination that I believe I have against *Labor Ready* and all other employment related issues (excluding only claims arising under the National Labor Relations Act or otherwise within the jurisdiction of the National Labor Relations Board) will be resolved by arbitration as my sole remedy.** The arbitration shall be conducted by the American Arbitration Association under its Employment Arbitration Rules and the decision of the arbitrator shall be final and binding. I understand that *Labor Ready* also agrees to arbitrate in the same manner any claims which the company believes it has against me."

---

[1] There has been no adjudication of the merits of plaintiffs' claims. We set forth the undisputed facts and, where necessary, the allegations of the parties.

[2] Plaintiffs originally sued Labor Ready, Inc. Subsequently, they amended their complaint to name Labor Ready Southwest, Inc. as a Doe defendant. The relationship between the two entities is not reflected in the record. We use "Labor Ready" to refer to the Labor Ready entities collectively.

[3] Labor Ready has not been completely successful in asserting its workers are not employees when between jobs. For purposes of the National Labor Relations Act, Labor Ready's workers are employees even when they are between assignments. (*NLRB v. Labor Ready, Inc.* (4th Cir. 2001) 253 F.3d 195, 199–201.)

(Original boldface and italics.) Each applicant for employment must sign the Policy Regarding Dispatch Procedures, Employment and Arbitration, indicating agreement.

In 2001, International Window Corporation (IWC)[4] expected a strike of its unionized workers and met with Labor Ready in order to arrange for Labor Ready to provide temporary replacement labor.[5] According to plaintiffs, IWC wanted only male workers to be sent to its jobsite, unless it specifically requested otherwise, and Labor Ready agreed. Plaintiffs are some 120 women[6] who applied for jobs with Labor Ready. They allege they were not hired by Labor Ready to work at IWC as the result of illegal gender discrimination. On July 29, 2002, plaintiffs filed this action against Labor Ready and IWC, alleging violation of the Fair Employment and Housing Act; wrongful failure to hire, in violation of public policy and related causes of action.

Labor Ready petitioned to compel arbitration, relying on the arbitration clause in its application for employment. IWC joined, asserting it was a third party beneficiary of the Labor Ready employment application. Plaintiffs opposed the motions, arguing their claims for preemployment discrimination did not arise out of any "employment" and therefore were outside the scope of the arbitration clause. Plaintiffs also argued the arbitration clause was an unconscionable adhesion contract.

The trial court denied the petition to compel arbitration, agreeing that the absence of an employment relationship was fatal to defendants' claim. The trial court did not expressly rule on plaintiffs' unconscionability argument, implicitly finding it unnecessary to determine whether the contract was enforceable given the finding that the arbitration clause did not reach plaintiffs' preemployment discrimination claims. Defendants filed timely notices of appeal.

## CONTENTIONS OF THE PARTIES

Defendants concede that plaintiffs were not Labor Ready's employees, and therefore do not attempt to argue that plaintiffs' preemployment discrimination claims "aris[e] out of [their] employment." They instead argue plaintiffs' claims fall within that part of the arbitration clause that applies to "all other employment related issues." Plaintiffs respond that "all other employment

---

[4] We use "IWC" to refer collectively to International Window Corporation and its parent, International Aluminum Corporation.

[5] We refer to Labor Ready and IWC, collectively, as "defendants."

[6] Plaintiffs seek class action status.

related issues" is not an alternative category of arbitrable claims within the meaning of the agreement, but is instead simply one of the categories of claims the arbitration clause includes within those disputes "arising out of . . . employment." Plaintiffs also reassert their argument that the agreement is unconscionable.

## DISCUSSION

### 1. Standard of Review

"The issue . . . presented is whether the trial court correctly interpreted the language of the parties' arbitration agreement. This issue is subject to de novo review because the court construed the terms of the contract without any conflicting extrinsic evidence." (*Vianna v. Doctors' Management Co.* (1994) 27 Cal.App.4th 1186, 1189 [33 Cal.Rptr.2d 188].)

### 2. Interpretation of Arbitration Agreements

■ The Federal Arbitration Act (FAA) provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) The FAA is broad in coverage, applying to any agreement within the scope of Congress's ability to regulate interstate commerce. (*Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 268 [130 L.Ed.2d 753, 115 S.Ct. 834].) "The purpose of the FAA coverage provision . . . is to compel judicial enforcement of a wide range of written arbitration agreements, even though there was historically a resistance by American courts to the enforcement of arbitration agreements." (*Ruiz v. Sysco Food Services* (2004) 122 Cal.App.4th 520, 534 [18 Cal.Rptr.3d 700].)

■ When an arbitration agreement is subject to the FAA, "questions concerning the construction and scope of the arbitration clause are determined by federal law." (*Baker v. Aubry* (1989) 216 Cal.App.3d 1259, 1263 [265 Cal.Rptr. 381].) However, California also has a policy in favor of arbitration, which is as strong as that of the FAA. (*Vianna v. Doctors' Management Co., supra,* 27 Cal.App.4th at p. 1190.) Under both California and federal law, arbitration is strongly favored and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. (*Ruiz v. Sysco Food Services, supra,* 122 Cal.App.4th at p. 538; *United Transportation Union v. Southern Cal. Rapid Transit Dist.* (1992) 7 Cal.App.4th 804, 808 [9 Cal.Rptr.2d 702].) The burden is on the party opposing arbitration to show the agreement cannot be interpreted to apply to the dispute. (*Buckhorn v. St. Jude Heritage Medical Group* (2004) 121 Cal.App.4th 1401, 1406 [18 Cal.Rptr.3d 215].) Whether a contract is reasonably susceptible to a party's interpretation can be determined from the language of the contract

itself. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 798 [79 Cal.Rptr.2d 273].) The policy in favor of arbitration does not apply when the contract cannot be interpreted in favor of arbitration. There is no policy in favor of arbitrating a dispute the parties did not agree to arbitrate. (*Lawrence v. Walzer & Gabrielson* (1989) 207 Cal.App.3d 1501, 1505 [256 Cal.Rptr. 6].)

### 3. Labor Ready's Agreement

As plaintiffs are opposing arbitration, they have the burden to show the arbitration clause cannot reasonably be interpreted to apply to pre-employment claims of discrimination. Labor Ready's arbitration clause provides, in pertinent part, "I agree that any disputes arising out of my employment, including any claims of discrimination, harassment or wrongful termination that I believe I have against Labor Ready and all other employment related issues (excluding only claims arising under the National Labor Relations Act or otherwise within the jurisdiction of the National Labor Relations Board) will be resolved by arbitration as my sole remedy." (Boldface omitted.)

Plaintiffs argue that preemployment claims of discrimination do not "aris[e] out of [their] employment." They are indisputably correct. Three sentences above the arbitration clause, in the same Policy Regarding Dispatch Procedures, Employment and Arbitration, the agreement provides, "I understand that merely registering my availability to work does not constitute employment." Plaintiffs merely registered to work. Under Labor Ready's own terms, this does not constitute employment. Therefore, plaintiffs did not have an "employment" out of which any of their disputes could arise. This portion of the arbitration clause does not apply.[7] (Cf. *Lopez v. Charles Schwab & Co., Inc.* (2004) 118 Cal.App.4th 1224, 1233 [13 Cal.Rptr.3d 544] [parties agreed to arbitrate any controversy arising from the applicant's "relationship" with the defendant; as there was no relationship, there was no basis to enforce the agreement].)

---

[7] Defendants rely on *Adkins v. Labor Ready, Inc.* (4th Cir. 2002) 303 F.3d 496, a case which applied Labor Ready's arbitration clause to causes of action asserted by Labor Ready workers for payment for waiting time, travel time, required training time, and so forth. The plaintiffs argued *against* arbitration on the theory that even if the arbitration agreement initially created a binding contract, the contract terminated at the end of their first day of work, when they were deemed to have quit. The Fourth Circuit disagreed, holding that the employment application governed the entire business relationship between the plaintiffs and Labor Ready, not just the moments when they were employed. (*Id.* at p. 504.) This case is inapposite. The court was concerned only with whether the contract *itself* had terminated, not whether the plaintiffs' claims fell within the scope of the arbitration clause. The scope of the arbitration clause was neither raised nor argued in *Adkins*. In the case before us, the scope of the agreed arbitration is *the* issue.

■ Defendants respond that, even if the disputes did not arise out of plaintiffs' employment, the arbitration agreement also contains language agreeing to arbitrate "all other employment related issues," which must include claims of preemployment discrimination. Were the "other employment related issues" language standing alone, defendants would be correct. The failure to hire on the basis of gender is an unlawful employment practice. (Gov. Code, § 12940, subd. (a); see also *Derrickson v. Circuit City* (D.Md. 1999) 1999 U.S. Dist. LEXIS 21100 [81 Fair Empl.Prac.Cas. (BNA) 1533].)

■ However, in interpreting the scope of an arbitration (or any) agreement, we do not consider an individual phrase out of context. (Civ. Code, § 1641; see *Lawrence v. Walzer & Gabrielson, supra,* 207 Cal.App.3d at pp. 1505–1506.) We must therefore consider and construe the phrase "all other employment related issues" language in the sentence in which it appears.

Plaintiffs argue that the "all other employment related issues" language is simply a part of the "including" clause, which describes those disputes arising out of one's employment that are to be considered arbitrable. Defendants argue it describes a second category of disputes which are to be considered arbitrable in addition to those arising out of employment. The contract language itself shows plaintiffs to be correct.

We restate the key sentence, adding italics. "I agree that any disputes arising out of my employment, *including any claims of discrimination, harassment or wrongful termination that I believe I have against Labor Ready* and all other employment related issues (excluding only claims arising under the National Labor Relations Act [NLRA] or otherwise within the jurisdiction of the National Labor Relations Board) will be resolved by arbitration as my sole remedy." For defendants' interpretation to be plausible, the italicized portion of the sentence must be read to modify "disputes arising out of my employment," while "and all other employment related issues" is a separate category. This is incorrect for two reasons: First, the italicized language is not set off by commas. Without a comma between "Labor Ready" and "and all other employment related issues," there is no reason to believe "all other employment related issues" is not also part of the "including" clause. Second, and more significantly, if we were to interpret "all other employment related issues" to be a separate, second category of arbitrable disputes, the parenthetical clause would apply only to that second category. This is nonsensical. Clearly, Labor Ready did not intend to exclude from arbitration only NLRA claims that are "other employment related issues" but not those "arising out of . . . employment." In short, the only reasonable interpretation of the arbitration clause is that "and all other employment related issues" is part of the "including" phrase italicized above. In other words, the arbitration clause is limited to "disputes arising out of . . . employment," including claims of

discrimination, harassment, wrongful termination, and any other employment related issues, but not NLRA claims.

In our view, any interpretation of "other employment related issues" standing alone or as a separate category is simply not justified. This arbitration clause plainly applies *only* to those employment related issues which arise out of *employment*. As plaintiffs were never employed, the arbitration clause does not apply.

### 4. *A Different Contract Would Have Provided For a Different Result*

■ Our conclusion is based only on the language of the agreement Labor Ready had its applicants sign. We agree that an employment application can contain an arbitration clause regarding disputes arising out of the subsequent employment. (See *Martindale v. Sandvik, Inc.* (2002) 173 N.J. 76, 89 [800 A.2d 872].) We further agree that an employment application can contain an arbitration clause regarding disputes arising out of the application itself. (See *Johnson v. Circuit City Stores* (4th Cir. 1998) 148 F.3d 373, 374.)[8] We simply hold that the language in Labor Ready's application cannot reasonably be construed as an agreement to arbitrate preemployment discrimination claims.

### 5. *Remand is Unnecessary*

■ In California, a trial court is required to first rule on the "gateway" issues of whether an arbitration agreement is enforceable, including claims of unconscionability, before considering whether a particular dispute is within the scope of the arbitration clause. (*Omar v. Ralphs Grocery Co.* (2004) 118 Cal.App.4th 955, 961 [13 Cal.Rptr.3d 562].) When the trial court has not done so, it is appropriate to remand for an initial determination of enforceability. (*Ibid.*) We decline, however, to remand in this case. As we conclude the arbitration agreement does not extend to plaintiffs' causes of action, any remand for a trial court determination of unconscionability would be an unnecessary expenditure of judicial resources.

---

[8] The Circuit City employment application provided, in pertinent part, "This agreement requires you to arbitrate any legal disputes related to your application for employment or employment with Circuit City."

## *DISPOSITION*

The judgment is affirmed. Labor Ready and IWC are to pay plaintiffs' costs on appeal.

Klein, P. J., and Kitching, J., concurred.