Filed 2/28/25  Stockton Unified School Dist. v. IAQ Distribution CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| STOCKTON UNIFIED SCHOOL DISTRICT, | C100381 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CV-UF-2023-0009336) |
| v. | |
| IAQ DISTRIBUTION, INC., et al., | |
| Defendants and Appellants. | |

This is an appeal from an order denying a petition to compel arbitration.  Based on its narrow interpretation of the arbitration agreement, the trial court denied the petition.  Defendants IAQ Distribution, Inc. (IAQ) and Alliance Building Solutions, Inc. (ABS) appeal, arguing the trial court misinterpreted the agreement.  We agree.  We thus reverse and remand this case to the trial court to determine in the first instance (1) whether the claims asserted are within the scope of the agreement as we have interpreted it herein, and (2) whether ABS and another defendant may enforce the agreement even though they are not parties to it.

1

# BACKGROUND

According to the allegations in the underlying complaint, in August 2021, IAQ and plaintiff Stockton Unified School District (the District) entered into a written agreement pursuant to which the District would purchase 2,000 "Air Guardian" air purification units, with installation, from IAQ for approximately $6.8 million. The agreement contained an arbitration provision that stated, in relevant part:

> "Written notice of any dispute must be provided to the other party, describing specific details of the dispute relating to changes in work or claim for additional compensation, within seven (7) days of the occurrence of the conditions. . . . If the parties are unable to resolve the dispute during this period, the parties shall proceed to binding arbitration. The arbitrator shall . . . determine all rights and obligations under this Agreement and the award of the arbitrator shall be final, binding and enforceable."

The District alleges it agreed to purchase the units based on representations they would disinfect classroom air and kill COVID-19. The representations were made by IAQ, ABS, and IllumiPure Inc. and IllumiPure Corp. (IllumniPure). IAQ and ABS are related entities and are both California corporations; IllumiPure manufactures the units in Texas and is a Texas corporation; and IAQ is IllumiPure's exclusive distributor in California. ABS and IllumiPure are not parties to the agreement.

Sometime after the agreement was executed, the District discovered that IAQ was not a licensed contractor in California, and it directed IAQ to "cease its unlicensed work installing the . . . units." In May 2022, the District and IAQ executed a "restated" agreement pursuant to which IAQ would only supply the units, but would not install

2

them.[1]  The restated agreement contained the same arbitration provision as the original agreement.

According to the District, in late 2022 it discovered the units were defective and were unable to "meaningfully benefit classroom air quality for District students and staff."  It thus filed a lawsuit against IAQ, ABS, and IllumiPure.  The District asserted two causes of action against all three defendants for making intentional and negligent misrepresentations about the units' performance and capabilities.  It also asserted seven additional causes of action against IAQ only for violations of California's False Claims Act (Gov. Code, § 12650 et seq.); money had and received under a contract that was void for noncompliance with competitive bidding statutes and contractor licensing requirements; breach of contract; breach of express and implied warranties; and professional negligence; and it sought a declaratory judgment regarding the parties' rights and duties under the agreement.

Citing the arbitration provision in the agreement, IAQ and ABS filed a petition to compel the District to arbitrate all claims asserted against them, and IllumiPure joined in the petition.  Although ABS and IllumiPure were not parties to the agreement, they argued they were entitled to enforce it based on equitable estoppel principles.[2]  The trial court denied the petition, holding the arbitration provision was "narrow" and did not apply to any of the claims asserted in the lawsuit.  Instead, it applied "only to 'disputes

---

[1]     Under the restated agreement the number of units purchased also increased to 2,171, and the total contract price decreased to approximately $6.6 million.

[2]     Equitable estoppel is one of "five theories under which an arbitration clause can be enforced by a nonsignatory."  (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 220.)  Under this theory, " 'a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are "intimately founded in and intertwined" with the underlying contract obligations.' "  (*Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 20.)

related to changes in work or claim for additional compensation,' neither of which is at issue in this litigation."**3**

IAQ and ABS have appealed the order; IllumiPure has not.**4**

## DISCUSSION

## I

### Relevant Law

"We review the trial court's interpretation of an arbitration agreement de novo when, as here, that interpretation does not depend on conflicting extrinsic evidence. [Citations.] ' "Whether an arbitration agreement applies to a controversy is a question of law to which the appellate court applies its independent judgment where no conflicting extrinsic evidence in aid of interpretation was introduced in the trial court." ' " (*Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 687 (*Ahern*); see also *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1212 [" '[I]n cases such as this, in which extrinsic evidence was not presented, "[d]eterminations of arbitrability, like the interpretation of any contractual provision, are subject to *de novo* review" ' "].) We review the correctness of the trial court's decision and not the correctness of its reasoning, and we will thus affirm the decision " 'if it is supported by any legal theory.' " (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 237.)

" 'The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract.' " (*Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 634.) "[T]he threshold

---

**3** IAQ and ABS do not dispute that none of the claims asserted in this lawsuit involve disputes related to changes in work or claims for additional compensation. Instead, they argue the trial court erred when it held the arbitration provision only encompassed such claims.

**4** An order denying a petition to compel arbitration is an appealable order. (Code Civ. Proc., § 1294, subd. (a).)

4

questions presented by every motion or petition to compel arbitration are whether an agreement to arbitrate exists [citations] and, if so, whether the parties' dispute falls within the scope of that agreement." (*Ahern*, *supra*, 74 Cal.App.5th at p. 687.) The only issue in this case is whether the parties' dispute falls within the scope of the arbitration provision in the agreement. If it does, then both California and federal law[5] provide the court "shall" order the parties to arbitrate the dispute. (Code Civ. Proc., § 1281.2; see also 9 U.S.C. § 2 ["A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"].)

Whether the parties agreed to arbitrate the claims asserted in the District's lawsuit is an issue of contract interpretation. "The ordinary rules of contract interpretation apply to arbitration agreements." (*Rice v. Downs* (2016) 248 Cal.App.4th 175, 185 (*Rice*).) "The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting." (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955.) "Such intent is to be inferred, if possible, solely from the written provisions of the contract." (*EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1321.) " 'In determining the scope of an arbitration clause, "[t]he court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the

---

[5] The Federal Arbitration Act (9 U.S.C. §1 et seq.) (FAA) applies to arbitration provisions in contracts involving interstate commerce, which includes contracts, like the one at issue here, to purchase equipment from an out-of-state manufacturer. (See, e.g., *Perry v. Thomas* (1987) 482 U.S. 483, 490 [FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause"]; *Herrera v. Doctors Medical Center of Modesto, Inc.* (2021) 67 Cal.App.5th 538, 542 ["Defendant is engaged in interstate commerce because, among other things, it purchases equipment, materials and supplies from out-of-state manufacturers"].)

circumstances under which the agreement was made." ' " (*Ahern, supra*, 74 Cal.App.5th at p. 687.) Where the language of the agreement is clear and explicit, it will be followed. (Civ. Code, § 1638.) "To the extent practicable, the meaning of a contract must be derived from reading the whole of the contract, with individual provisions interpreted together, in order to give effect to all provisions and to avoid rendering some meaningless." (*Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1027.) "An interpretation that leaves part of a contract as surplusage is to be avoided." (*Rice*, at p. 186.)

Numerous cases also hold that, under California law, "any doubt as to whether plaintiff's claims come within the arbitration clause must be resolved in favor of arbitration." (*EFund Capital Partners v. Pless*, *supra*, 150 Cal.App.4th at pp. 1320-1321; see also *Rice, supra*, 248 Cal.App.4th at p. 185 [" 'arbitration should be upheld "unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute" ' "]; *Balandran v. Labor Ready, Inc.* (2004) 124 Cal.App.4th 1522, 1527 ["any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"].) Federal law is similar. The United States Supreme Court has "repeatedly" held that "the FAA provides the default rule for resolving certain ambiguities in arbitration agreements" and "that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." (*Lamps Plus, Inc. v. Varela* (2019) 587 U.S. 176, 189; see also *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 25 [the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"].)

## II

## Analysis

We note at the outset that the arbitration provision in this case is unique and is unlike the arbitration provisions in *any* of the cases cited by the parties. Most arbitration

6

provisions say something like this: "The parties agree to arbitrate any dispute" "arising under," and/or "relating to," and/or "in connection with" "this agreement" and/or "the interpretation," "performance," "validity," "enforceability," and/or "breach" "of this agreement." (See, e.g., *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 442 [" 'Any claim, dispute, or controversy . . . arising from or relating to this Agreement . . . or the validity, enforceability, or scope of this . . . Agreement . . . shall be resolved . . . by binding arbitration' "]; *Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 268 [" 'any controversy or claim . . . arising out of or relating to the interpretation, performance or breach of any provision of this agreement shall be settled exclusively by arbitration' " (italics omitted)]; *Ahern, supra*, 74 Cal.App.5th at p. 681 [" 'any dispute arising in connection with the interpretation or enforcement of the provisions of this Agreement, or the application or validity thereof, shall be submitted to arbitration' "]; *Rice, supra*, 248 Cal.App.4th at p. 180 [" 'any controversy between the parties arising out of this Agreement shall be submitted to . . . arbitration' "]; *Buckhorn v. St. Jude Heritage Medical Group* (2004) 121 Cal.App.4th 1401, 1404, fn. 1 [" 'In the event that a dispute arises between the parties concerning the enforcement or the interpretation of any provisions of this Agreement, such dispute shall be submitted to arbitration' "]; *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 681, fn. 2. [" 'Any problem or dispute arising under this Agreement and/or concerning the terms of this Agreement . . . shall be arbitrated' " (italics omitted)].) The arbitration provision in this case contains no such language.[6]

---

[6] That means that most (if not all) of the cases cited by the parties to support their arguments that the District's claims either are or are not within the scope of the provision are distinguishable.

Instead, the arbitration provision in this case states, in relevant part and with bracketed numbers and bolding, underlining, and italics added to make the ensuing discussion easier to follow:

> "DISPUTES. **[1]** Written notice of ***any dispute*** must be provided to the other party, **<u>describing specific details of the dispute relating to changes in work or claim for additional compensation</u>**, within seven (7) days of the occurrence of the conditions. . . . **[2]** For a reasonable period . . . , but not to exceed thirty (30) days, the parties shall in good faith attempt to resolve the dispute. **[3]** If the parties are unable to resolve the dispute during this period, the parties shall proceed to binding arbitration. The arbitrator shall be neutral and mutually acceptable; ***the arbitrator shall determine all rights and obligations under this Agreement***[7] and the award of the arbitrator shall be final, binding and enforceable. . . ."

The parties focus on different portions of this provision, and thus offer different interpretations of what disputes they agreed to arbitrate. IAQ focuses on the two italicized phrases, and the District focuses on the underlined phrase.

IAQ argues the italicized phrases demonstrate the parties intended that "any dispute" was subject to arbitration, and arbitration would be used to "determine all rights and obligations under this Agreement." Although not entirely clear, it appears IAQ contends that reading the provision as a whole and giving effect to every part therein demonstrates the parties agreed to arbitrate any dispute regarding their rights and obligations under the agreement, and we agree with this interpretation.[8] The provision

---

**7**     At oral argument both parties conceded that the "Agreement" represents the entire contract and not just the arbitration provision.

**8**     At times it appears IAQ contends the parties agreed to arbitrate "any dispute," which could include, for example, defamation claims unrelated to the agreement or claims for sexual harassment of a District employee by an IAQ employee. As explained herein, we do not interpret the provision that broadly.

states the parties must provide written notice of "any dispute"; they must attempt in good faith to resolve the dispute; and if they are unable to do so they "shall proceed to binding arbitration" and the arbitrator "*shall determine all rights and obligations under this Agreement*." (Italics added.) We interpret the italicized language as delineating both the scope of what the arbitrator must determine, and also the scope of what the parties agreed to submit to arbitration. In other words, because the arbitrator "shall determine all rights and obligations under" the agreement, that language also defines the scope of the agreement to arbitrate.

As for the underlined phrase in the first sentence (i.e., "Written notice of any dispute must be provided to the other party, describing specific details of the dispute relating to changes in work or claim for additional compensation, within seven (7) days" (underlining added)), IAQ argues the most plausible way to interpret the sentence as a whole is as follows: (1) it requires the parties to provide written notice of any dispute within seven days; and (2) if the dispute relates to changes in work or claims for additional compensation, the written notice must provide specific details about the dispute; but (3) if the dispute does not relate to changes in work or claims for additional compensation, the written notice need not provide specific details about the dispute. Although awkwardly phrased, we agree that, grammatically, that is the most plausible way to interpret the first sentence.

IAQ's interpretation thus gives effect to every part of the provision, with each part helping to interpret the others, and leaves no part surplusage. (See Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"]; *Rice*, *supra*, 248 Cal.App.4th at p. 186 ["[a]n interpretation that leaves part of a contract as surplusage is to be avoided"].)

The District disagrees. It interprets the provision as establishing a three-step dispute resolution process, consisting of (1) written notice of the dispute, (2) a good faith

attempt to resolve the dispute, and (3) arbitration.  The District then focuses on the first sentence of the provision, and, in particular, on the underlined portion:  "Written notice of any dispute must be provided to the other party, <u>describing specific details of the dispute relating to changes in work or claim for additional compensation</u>, within seven (7) days of the occurrence of the conditions."  (Underlining added.)  Finally, the District argues the entire dispute resolution process—including arbitration—*only* applies to disputes relating to changes in work or claims for additional compensation.  The District thus effectively argues the first sentence, standing alone, defines the scope of the agreement to arbitrate and limits it to disputes relating to changes in work or claims for additional compensation.  The trial court agreed with the District.  We disagree.

We note, initially, that the first sentence is poorly drafted.  This is thus *not* a case wherein the language of the first sentence is so "clear and explicit" that all we need to do is enforce it as written.  (See Civ. Code, § 1638 ["The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"].)  Instead, and as we have just explained, we must interpret this sentence in light of the provision as a whole and give meaning to every part, including the part that states "the arbitrator shall determine all rights and obligations under this Agreement."  The District fails to address this part of the arbitration provision or give it any meaningful effect, and it thus runs afoul of the rule that "[a]n interpretation that leaves part of a contract as surplusage is to be avoided."  (*Rice*, *supra*, 248 Cal.App.4th at p. 186.)  We also note that it would make little sense to provide the arbitrator "shall determine *all* rights and obligations under this Agreement" (italics added) if the parties only agreed to arbitrate a small class of disputes relating to changes in work or claims for additional compensation.

Moreover, we are not persuaded by the District's argument that the first sentence, standing alone, only requires the parties to provide written notice of disputes relating to changes in work or claims for additional compensation, or provides that such disputes are

10

the only disputes subject to arbitration. If the parties intended to limit either written notice or arbitration to such disputes it would have been much easier to say something like this: *Written notice of any dispute relating to changes in work or claims for additional compensation must be provided to the other party, with specific details, within seven days*. Or even better: *The parties agree to arbitrate any dispute relating to changes in work or claims for additional compensation*. But that is not what the first sentence says.

Nor are we persuaded by the District's argument that the "relevant rule of construction" in this case "is the doctrine of *ejusdem generis*" (which is Latin for "of the same kind or class." (Black's Law Dict. (12th ed. 2024)). The doctrine of *ejusdem generis* "provides that 'when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed.' " (*Wishnev v. The Northwestern Mutual Life Ins. Co.* (2019) 8 Cal.5th 199, 213.) "As an example, in the phrase 'sun, moon, planets, and other large bodies,' the general term 'other large bodies' would be interpreted to mean other large heavenly bodies to be consistent with the more specific terms that precede it. The general term would not be given the much broader connotation it might otherwise have: a meaning that might embrace bodies of water or certain professional athletes." (*Id*. at p. 213, fn. 14.) The doctrine is based on the presumption that if a drafter "intends a general word [or term or phrase] to be used in its unrestricted sense, it does not also offer as examples peculiar things or classes of things since those descriptions then would be surplusage." (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 141.) Thus, in the example just given, if the drafter intended the phrase " 'large bodies' " to be used in its unrestricted sense, it would not also have specified " 'sun, moon, and planets,' " since those descriptions would be surplusage. " '*Ejusdem generis* applies whether specific words follow general words . . . or vice versa. In either event, the general term or category is

11

"restricted to those things that are similar to those which are enumerated specifically." ' " (*People v. Giordano* (2007) 42 Cal.4th 644, 660.)

We find the doctrine of *ejusdem generis* is simply not applicable here because the first sentence of the arbitration provision does not consist of a " 'list or catalogue of items.' " (*Kelly v. Methodist Hospital of So. California* (2000) 22 Cal.4th 1108, 1121 [doctrine "instructs that 'when a statute contains a list or catalogue of items, a court should determine the meaning of each by reference to the others, giving preference to an interpretation that uniformly treats items similar in nature and scope' "]; see also *Wishnev v. The Northwestern Mutual Life Ins. Co.*, *supra*, 8 Cal.5th at p. 213 [" 'when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed' "].) The District's argument might be persuasive if the first sentence said something like this: *Written notice of a dispute relating to changes in work, a claim for additional compensation, or any other dispute must be provided to the other party within seven days*. Or even this: *Written notice of any dispute, a dispute relating to changes in work, or a dispute relating to claims for additional compensation must be provided within seven days*. In either of those cases it might be reasonable to interpret the general phrase "any dispute" by reference to the other items on the list, and to adopt " 'an interpretation that uniformly treats items similar in nature and scope.' " (*Kelly*, at p. 1121.) But that is not how the first sentence is structured. Rather than viewing the first sentence as a general term (i.e., "any dispute") followed and limited or modified by specific terms (i.e., "dispute relating to changes in work or claim for additional compensation"), we find it is more natural to view the phrase "disputes relating to changes in work or claim for additional compensation" as a clause that singles out two types of disputes (i.e., disputes relating to changes in work and disputes relating to claims for additional compensation) for special treatment (i.e., notice of the dispute must provide specific details).

In sum, we find the only way to interpret the arbitration provision as a whole, and to give effect to every part therein, is as requiring the parties to arbitrate all disputes regarding their rights and obligations under the agreement, and not just disputes relating to changes in work or claims for additional compensation. Moreover, and as stated above, even if we found the arbitration provision was ambiguous or we had doubts about its scope, we would be required to resolve those ambiguities or doubts in favor of arbitration. (See *Balandran v. Labor Ready, Inc.*, *supra*, 124 Cal.App.4th at p. 1527 ["any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"]; *Lamps Plus, Inc. v. Varela*, *supra*, 587 U.S. at p. 189 ["ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration"].) This "default rule" provides further support for our conclusion that the scope of the arbitration provision in this case extends to all disputes regarding the parties' rights and obligations under the contract, and not just disputes relating to changes in work or claims for additional compensation. (*Lamps Plus, Inc.*, at p. 189.) Because the trial court found otherwise, we reverse the order denying the petition to compel arbitration.

That still leaves two issues to be decided: (1) whether the arbitration provision, properly interpreted, covers all nine claims asserted by the District in its lawsuit; and (2) whether ABS and IllumiPure may enforce the arbitration provision even though they are not parties to the agreement. We note that the parties have addressed both issues in their briefs. Rather than deciding these issues in the first instance, however, we find it is more appropriate to remand this case to the trial court to do so. In remanding this case, we express no opinion on how the trial court should decide these issues.[9]

---

[9] Depending on how the trial court rules on these issues, it may also have to decide whether ABS and/or IllumiPure are third parties within the meaning of Code of Civil Procedure section 1281.2, subdivision (c), and, if so, whether the District's claims against them "aris[e] out of the same transaction or series of related transactions" as its claims against IAQ "and there is a possibility of conflicting rulings on a common issue of law or

## DISPOSITION

The order denying the petition to compel arbitration is reversed and this case is remanded to the trial court to decide whether the arbitration clause, properly interpreted as stated herein, covers each claim asserted by the District, and whether ABS and IllumiPure may enforce the arbitration provision. IAQ and ABS shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____/s/_____
EARL, P. J.

We concur:

_____/s/_____
ROBIE, J.

_____/s/_____
DUARTE, J.

---

fact." (Code Civ. Proc., § 1281.2, subd. (c).) And assuming the trial court reaches that issue, it may then also have to decide the parties' competing claims about whether it has authority to "refuse to enforce the arbitration agreement" or "stay arbitration pending the outcome of the court action," or whether those two alternatives are preempted by the FAA and it must "stay the pending court action . . . pending the outcome of the arbitration proceeding." (Code Civ. Proc., § 1281.2, subd. (d).)